## EX PARTE CLAUDE PRIVITT.

No. 17297. Delivered November 7, 1934.
Rehearing Denied January 2, 1935.
Reported in 77 S. W. (2d) 663.

The opinion states the case.

*Davenport & Loftin,* of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—From a judgment of the district court of Clay County holding appellant in contempt and directing that he be punished by confinement in the county jail for three days and the payment of a fine of $100,—appellant has appealed to this court.

If we understand the record in this case, it is admitted that after one Harding had been drawn for service upon a jury panel in the district court of Clay County for the week beginning September 24, 1934,—and with full knowledge of that fact, this relator,—who had pending against him a felony case in said court, which was set for trial during said week,—in person and accompanied by a friend approached Harding with inquiries as to how he felt about turning a man loose who had been caught with whisky in his possession, and imparted to Harding information evidently intended to affect the attitude of Harding as a prospective juror. Appellant had been to the office of the district clerk and there got a copy of the list of jurors drawn for said week. Appellant was later cited to appear and show cause why he should not be held in contempt of court for attempting to influence said juror, and upon a hearing was adjudged guilty of contempt, and his punishment fixed as above stated. Appellant's position is that since the juror had not been impaneled, the court below was without jurisdiction to punish for contempt. We are not able to agree with appellant. The juror had been served with summons to appear for jury service for the week beginning September 24, 1934, as stated.

It thus appears that the machinery of the law had been set in motion in regard to the juror Harding, and that by operation of same he had been placed in such relation to the court as that

he would have been subject to punishment for contempt had he failed to appear for jury service at the time designated. In United States v. DeVaughan, 25 Fed., No. 14952, it was held that a juror in a similar attitude as was Harding in this case, who after summons so informed himself about the pending case as that when questioned he could claim excuse from jury service upon the ground of an opinion already formed,—was properly held in contempt. See, also, Little v. State, 90 Ind., 338; United States v. Kilpatrick, 16 Fed., 765; Baker v. State, 82 Ga., 776; Burnett v. State, 8 Okla. Cr., 639.

The glory of our Nation lies in an untarnished court procedure, each part in which should be kept scrupulously clean. Early in our history we wrote articles 163-165 of our Penal Code, which severely punishes him who bribes or offers to bribe any juror, umpire or referee, and it is specifically stated in article 165, id. that the offense is complete regardless of whether such juror has actually been summoned; it is sufficient if the bribe be given or accepted in view of his being summoned. If the legislature may go so far in their effort to keep pure our juries as to subject to punishment by imprisonment in the penitentiary one who tries to bribe a juror who has only been drawn on a jury, and before he has even been summoned, certainly there would seem no possible doubt of the power of the judge of the court upon whose jury one has been actually drawn to serve,—if thereafter he be wilfully subjected to an attempt of one whose case was set for trial during the exact time for service of said juror, to feel him out and discuss with him the facts of such case,—upon proof thereof to hold such person in contempt.

Waiving the proposition of an intent to bribe in the case before us had the juror in question indicated a favorable attitude, —it would be a fearful situation if any or all of the jurors summoned for particular service might be approached and apprised of the facts involved in pending cases even though there be no more of evil purpose than that such jurors thereby become disqualified to sit in such cases for that they have formed opinions as to the guilt or innocence of the accused which might influence their verdict. In 13 Corpus Juris, sec. 3, p. 5 appears a definition of constructive contempt as follows: "Any act done, not in the presence of the court but at a distance, which tends to belittle, degrade, obstruct, interrupt or embarrass the administration of justice." See 9 Cyc., sec. 3, p. 6; also Holbrook v. Ford, 153 Ill., 633; Stewart v. State, 140 Ind., 7; State v. Henthorn, 46 Kan., 613; Ex parte Duncan, 78 Texas

Crim. Rep., 447. Again in 9 Cyc., 16, it is said that "all wilful attempts of whatever nature seeking to improperly influence jurors * * * whether it be by conversations or attempts to bribe, and all efforts to influence the action of officers in the selection of the personnel of the jury,—obstruct or tend to hinder the due administration of justice, and therefore constitute contempts." As illustrative, this court held in Orman v. State, 24 Texas App., 495, that one who eavesdropped a deliberating jury was in contempt. See Ex parte Wolters, 64 Texas Crim. Rep., 238; Ex parte Robertson, 27 Texas App., 628. Again noting the extent to which our legislature has gone, we observe that article 175, P. C. makes him guilty of bribery of a witness who induces a prospective witness to secrete himself so that he may not be served with process. Would the judiciary be held impotent to punish for contempt one who wilfully obstructs, interrupts, impedes and embarrasses the proper functioning of its lawful machinery by communicating to a juror before he has been sworn in facts which would, to say the least, disqualify him as such juror? We think not.

It is hard enough in any case to secure jurors who have not read of the case, or from some other source formed an opinion, and it would be indeed a sorry day if litigants, civil or criminal, might surreptitiously secure in advance lists of jurors summoned for the week of the trial of their cases,—and go or send their friends to pour privately into the ears of prospective jurors their own versions of their cases, either to disqualify such jurors, or to corrupt them, thus rendering more difficult the due administration of justice and the proper execution of the law.

Appellant seems to find something in Ex parte Shepherd, 153 S. W., 628, favorable to his contention. We do not so read the case. A juror for the week was approached improperly about a case set for that week but not yet called. We upheld the judgment of contempt. There may be some difference, resting on the fact that the juror involved had appeared and been sworn for service during the week,—but there seems no difference in the possible harm resulting, nor the injury to the proper functioning of the court. See, also, Ex parte McRae, 45 Texas Crim. Rep., 285.

Believing that the court below had jurisdiction of the person and of the subject matter, and that his judgment was correct, said judgment is in all things affirmed and relator is remanded.

*Affirmed and relator remanded.*

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—We have again examined the record in the light of relator's motion for rehearing, and believe proper disposition of the case was made in our original opinion. The machinery of the court was placed in motion when the jurors for the week were drawn, and such conduct as relator was shown to be guilty of with reference to the jury selected would unquestionably hamper and obstruct the due administration of justice, cause jurors to disqualify themselves and if carried far enough, destroy the use of the entire panel for the week.

The motion for rehearing is overruled.

*Overruled.*