14719

HORNSBY v. HORNSBY

(198 S. E., 29)

464

Mr. *Norbert A. Theodore,* for appellant,

Mr. *John E. Edens,* for respondent,

July 11, 1938.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The appeal in this case is from an order of Judge Holman, dated January 28, 1938, and from several prior orders made by him in the cause. The action was commenced by the plaintiff, the wife of the defendant, on or about September 1, 1936, and is "one for support and separation." It was alleged in her complaint, among other things, that she and Myrtine Hornsby were married in 1902, and that they have two children, both of whom are living and are of age; that the plaintiff was sixty-one years old and unable to earn her own living, while her husband was fifty-eight years of age and was earning approximately $35.00 per week; that "for several years past the defendant has failed to provide a home and support for the plaintiff, and has spent all of his income on himself and other women;" and that he, without just cause or reason, had deserted her, and since the time of such desertion had failed to furnish her with sufficient money "for the necessities of life," giving her from time to time after he left her the totally inadequate sum of $5.00 per

week. She demanded judgment as follows: 1. That the defendant be required to pay her a reasonable sum each week as alimony for her support and maintenance, and to pay her counsel, a fair amount as attorney's fees. 2. That pending the outcome of this suit, the defendant be made to pay her a reasonable sum for her support.

The County Judge, upon the verified complaint, issued a rule commanding the defendant to show cause on September 10, 1936, why he should not be required to pay the plaintiff "a reasonable sum for her support and maintenance and counsel fees." By way of return and answer, the defendant alleged, *inter alia,* that Mrs. Hornsby, his wife, had deserted him "without any excuse whatsoever and that she had refused to live with him at the home which he selected." The matter was duly heard by Judge Holman, who issued an order on September 11, 1936, in which he decreed that the defendant should pay the plaintiff, as temporary maintenance and support, the sum of $10,00 per week, and that he should also pay her attorney, in installments of $2.00 per week, a fee of $25.00. From the date of this order to January, 1938, as disclosed by the record, the defendant was brought before the County Judge several times, and was twice adjudged in contempt of Court because of his failure to make some of the weekly payments, as required. An order of September 8, 1937, one of those issued during the period mentioned, directed how the weekly installments then in default should be paid by the defendant, and provided that he should be committed to jail upon his failure to make such payments. Leave was granted the plaintiff to apply for any additional orders necessary to carry the decree into effect.

On January 22, 1938, the plaintiff filed with the Court her verified petition, in which she alleged that the defendant had not complied with the order of September 8, 1937, and asked that such order be put into effect. Thereupon, Judge Holman issued a rule requiring Hornsby to show cause before him on January 26, 1938, why he "should not be ad-

judged in contempt of Court." In his return thereto, the defendant attempted to justify his failure to pay some of the weekly installments directed to be paid, claiming that the amount was too large, and requested that "the issues of facts raised by the pleadings * * * be submitted to a jury for determination."

In his order of January 28, 1938, made in pursuance to the hearing had, the County Judge said: "This matter has been pending before me for some seventeen months, and I have heard the case on the merits on three separate occasions and have also adjudged the said Myrtine Hornsby in contempt of Court on two occasions. It appears that the defendant has ignored the orders of this Court and to a certain extent in a rather disrespectful manner. I feel that the case has been sufficiently tried, and the patience of this Court has been tried to more than a reasonable extent with this defendant." He then decreed that Hornsby should pay the plaintiff five-twelfths of his weekly salary, commencing as of January 29, 1938, and that his employer, the Columbia Lumber & Manufacturing Company, should deduct such amount from defendant's salary each week, when same became due and payable, and pay it to plaintiff's attorney. It was also ordered how and when Hornsby should pay the sum of $27.00, then in arrears. The defendant was adjudged in contempt of Court, and the sheriff was directed to take him into custody and incarcerate him in the county jail. It was provided, however, that if the payments decreed should be promptly made, the provision of the order as to contempt be held in abeyance, but if the payments were not made as directed, then such provision would be enforceable upon the certificate of plaintiff's attorney to the sheriff, to that effect. The Columbia Lumber & Manufacturing Company was permitted to interpose any objection it might have to the order. The defendant was given ten days in which to submit authorities as to his claim that he was entitled to a jury trial; and it was decreed that the cause be held open on that point for such period of time, "and if the authorities

are not sufficient then this order for alimony is made permanent, and the case can be closed and judgment finally entered."

While the exceptions are eleven in number, counsel for appellant, defendant below, states and argues but five questions. These we will now consider.

Alimony is based upon the common-law obligation of a husband to support his wife; and, as stated in 19 C. J., 201, it "is either temporary, which is payable during the pendency of the suit, or permanent, which is payable after determination of the suit during the joint lives of the parties." And "while temporary alimony may be allowed without inquiry into the merits of the case, yet a *prima facie* case must be shown in behalf of the wife." 19 C. J., 210; *Messervy v. Messervy*, 80 S. C., 277, 61 S. E., 442, 444. In *Smith v. Smith*, 51 S. C., 379, 29 S. E., 227, the Court, in holding that the right existed in this State to grant suit money and temporary alimony, pointed out that (page 229) "one of the modes of enforcing compliance with an order for alimony *pendente lite* is by an attachment for contempt."

In regard to the first question, the appellant seems to claim that the County Judge, in ordering the defendant to be placed in jail for contempt of Court, did not correctly follow the rules of law governing in contempt proceedings. He wants to know whether a Court may issue an order directing the sheriff to commit a party to jail on the certificate of an attorney, or may commit a party in contempt without a rule to show cause or an affidavit to support such a rule.

As we gather from the record for appeal, the Court had much trouble in getting the appellant to obey its orders in the matter of the payment of the temporary alimony directed to be paid by him; and the County Judge, instead of committing the defendant to jail at once for contempt of Court, as he could have done, gave him further time in which to make such payments. In perhaps two of these orders, the

Judge did direct that, if the defendant failed to comply with the Court's order in the matter, he should be placed by the sheriff in the county jail upon the certificate of the plaintiff's attorney showing that the payments had not been made as directed, such certificate to be made to the sheriff by the attorney. This was not the correct procedure. If the Judge, out of the goodness of his heart, chose to indulge the defendant, as he did, he alone could determine, upon a proper showing, whether the appellant should be committed to jail for having failed to obey the Court's order. It was within the realm of possibility that something might have happened during such period of time which made it impossible for Hornsby to make the payments as directed. However, as it is not made to appear that the defendant was placed in jail by such a method, he has no ground for complaint. As to the latter part of this question, while the record does not contain the rule issued, if any, in every instance, the orders of the Court, with one or two exceptions, recite that the matter was heard by the Judge upon such a rule. Of course, as stated in 13 C. J., 68, "before a person can be found guilty of contempt not committed in the presence of the Court, he must have due and reasonable notice of the proceeding. A rule to show cause, an attachment, or other process should issue." And it is said in *State v. Nathans,* 49 S. C., 199, 27 S. E., 52, 57, 58, that "the almost universal method by which contempt proceedings are begun is by affidavit, and an examination of the authorities will generally disclose that in all contempt proceedings, save for such as are committed in the Court's immediate presence, an affidavit is essential." The verified petition of the party applying for a rule to show cause, however, is a substantial compliance with the principle of law above stated, when and if the petition alleges facts sufficient upon which to base the issuance of such order. The Court below, therefore, was in error, if it disregarded in any instance, as appears from the incomplete and unsatisfactory record it may have done, the

principles controlling in contempt proceedings, as above stated.

About two months after the plaintiff had been awarded temporary alimony, the County Judge issued to the· Columbia Lumber & Manufacturing Company, defendant's employer, a subpœna *duces tecum* requiring that company to furnish the Court "a statement of the wages paid" the defendant "since the commecement of his employment with your company," and to send plaintiff's attorney a copy of same. In response thereto, the employer filed with the Court a memorandum of wages paid Hornsby by it during the period of time commencing the week ending August 7th to November 6, 1936, the total sum paid being $396.00. The appellant argues that this was error, as it was done without notice to him or to his attorney, thus depriving him of the opportunity to examine the party who undertook to furnish such information.

The husband's financial worth—the amount of his income, etc.,—is one of the facts about which the Court will inform itself before fixing the amount of temporary alimony ordered to be paid. Hence, on the hearing of the matter, witnesses may properly be examined on that point; and should the Court later desire further information thereabout, with a view to either increasing or decreasing the amount of alimony awarded, a hearing should be had for that purpose, and the defendant be given an opportunity to examine persons called at that time to testify. We do not understand, however, that the defendant here claims that the statement of his earnings furnished the Court by his employer was not correct, or that he suffered any harm from the method adopted to obtain it. The exception, therefore, raising this question is overruled.

As is seen from the order of the County Judge of January 28, 1938, the Court decreed, as already stated, that the defendant should pay the plaintiff five-twelfths of his weekly salary as alimony; and further ordered that "the Columbia Lumber & Manufacturing Com-

pany, for whom the said Myrtine Hornsby works, is hereby required to deduct from his salary each week, when the same is due and payable," five-twelfths thereof and pay the same to plaintiff's attorney for her.

The appellant complains of both of these provisions. As to the first, it is argued that the County Judge abused his discretion in requiring Hornsby to pay his wife so large a part of his salary as alimony. As the case must go back for a trial on the merits, we refrain from expressing an opinion thereabout. The question of the amount, if permanent alimony is allowed, under the facts as disclosed by the evidence, is for the determination of the trial Judge in the exercise of a wise and just judgment. As stated in *Prince v. Prince,* 1 Rich. Eq., 282, 289: "No doubt, circumstances must have their influence in determining the amount which should be decreed to an abandoned wife. If the parties are laboring people, the wife needs less. If she is in bad health, however, the amount should be increased. If the labor of the husband is of a comparatively unprofitable character, or if he is sickly, allowance should be made for these circumstances. If, on the other hand, he is in good health, and skilful, and is actually realizing considerable profits, the partner of his fortunes should not be refused a reasonable participation in them. Every case must be governed by its circumstances." See, also, *Thompson v. Thompson,* 10 Rich. Eq., 416; *Messervy v. Messervy, supra.*

In regard to the second provision, as the company was not a party to the action and was served with no process of any kind, it is clear that the Court was without authority to issue or to enforce the mandate contained in its order. In fact, counsel for the plaintiff does not argue otherwise, but merely suggests that this mode of payment, if agreed to, would save everybody concerned considerable trouble. It would seem, however, that the appellant has no real reason to complain. It is stated by respondent, and is not denied, that the company has never deducted anything from defendant's salary, as required by the order.

The contention is also made that the County Judge, in his order of January 28, 1938, committed error in holding that he had tried the case on the merits. We think that this contention is sound. For a proper and final disposition of the matter, it was necessary that such a trial be had; and while the Judge did say in his order of January 28th that he had heard the case on the merits on three separate occasions, it does not appear from the Court's orders, or otherwise, that the hearings had on the "occasions" referred to were intended to be, or really amounted to, a trial of the case on the merits. It must, therefore, be remanded for that purpose.

As an action of this kind is purely equitable in its nature, there is no merit in the argument of the appellant that he is entitled to a jury trial as a matter of right. It is stated in *Rhame v. Rhame,* 1 McCord Eq., 197, 205, 16 Am. Dec., 597: "That the Courts of Equity in this state have jurisdiction of cases of alimony is now settled by the long practice of the Court. *Prather v. Prather,* 4 Desaus., 33. From necessity such jurisdiction must exist somewhere; and there is no tribunal in the state where it can be so well exercised as in that Court. It belongs to the Ecclesiastical Court in England; but we have no such Court in this state. And even in England, during the Revolution, when the Ecclesiastical Courts were shut up, the Courts of Equity took cognizance of such cases. 1 Madd. Cha., 386. In the exercise of this power, however, there is no little difficulty in determining the extent of the jurisdiction." In *Smith v. Smith, supra,* the Court said: "The case of *Rhame v. Rhame,* 1 McCord Eq., 197 [16 Am. Dec., 597], and others which it is not necessary to mention, show that in this state courts of equity, in the exercise of their general chancery powers, have assumed jurisdiction of alimony as an independent right, and not as merely incidental to an action for legal separation or divorce." In the very recent case of *Matheson v. McCormac,* 186 S. C., 93, 195 S. E., 122, the following observation was made (page 124) : "That an

action for alimony is a suit in equity, and does not require the verdict of a jury, would appear to be the established law of this state."

The husband, of course, is entitled to a trial on the merits of the case, the controlling circumstances considered, within a reasonable time after the granting of temporary alimony. The present action having been brought in the County Court, the fixing of the date for the final hearing was and is left to the County Judge, following the usual and regular manner of the trial of equity cases in such Court. In some instances, the husband has no one to blame but himself for what he thinks is an unreasonable delay in the matter. The appellant here failed to comply fully with the Court's orders in the payment of temporary alimony, and on the hearings had, did not convince the County Judge that he was unable to do so. In fact, he was in default in the making of some of the payments at the time this appeal was taken. In the circumstances detailed, he has no reason to complain.

The order issued by the County Court on September 11, 1936, directing that the defendant pay the plaintiff suit money and temporary alimony, is sustained, and remains in full force and effect until the case is heard on the merits and the matter of permanent alimony is determined and final judgment is entered. In the meantime, should the defendant fail to pay, without good reason shown, the temporary alimony provided for, both that due and that in default, the Court will enforce payment thereof.

The order issued by the County Court, dated January 28, 1938, is reversed and the case remanded for trial on the merits.

And it is so ordered.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.

MR. JUSTICE CARTER did not participate on account of illness.