17154

The STATE, Respondent, v. JOE WEINBERG, Appellant
(92 S. E. (2d) 842)

*George W. Keels, Esq.,* of Florence, *for Appellant,*

*Robert L. Kilgo, Esq., Solicitor,* of Darlington, *for Respondent.*

May 2, 1956.

TAYLOR, Justice.

Appellant was tried and convicted of the charge of contempt of Court in two cases and sentenced to confinement in the county jail of Darlington County for a period of four months in each case, the sentences to run concurrently. Ap-

pellant now appeals contending that the trial Court erred· in that the facts and circumstances disclosed by the evidence were insufficient to support the findings of the trial Court that appellant was guilty of contempt of Court; and that the Court erred in sentencing appellant to imprisonment without the alternative of a fine. It is agreed between counsel that this Court's decision in one case is controlling in both.

At the June Term of General Sessions Court for Darlington County, jurors George DuBose and Clarence Boseman, Jr., were examined in open Court as to appellant and others having approached and discussed with them prior to that term of Court facts relating to a then pending case, at the time having knowledge that they were to serve as jurors at the June Term of Court. As a result, the Honorable J. Woodrow Lewis, presiding Judge, issued a rule requiring the appellant and others whose returns were adjudged sufficient and exonerated to show cause on the first day of July, 1955, why they should not be adjudged in contempt of Court for attempting to influence the said jurors in regards to the then pending case of *The State v. Cecil Weinberg and Allen Wright.*

The juror George DuBose testified that he lived in Darlington County, was engaged in the upholstery and parts business, but that he had never had any business dealings with appellant; that on June 18, appellant came to his home early in the morning and that he and the appellant and another sat in appellant's cár, as it was raining, and discussed. the case of appellant's son which was then pending in the Court of General Sessions for Darlington County, appellant stating to him that he knew he, DuBose, had been drawn for jury service for the next week, pertinent portions of the testimony being:

"Q. All right. What else did he say in connection with it? A. I understood him to say that there was something about two bottles of bottled in bond and two bottles of stump-hole whiskey; they scratched out the stump-hole whiskey and had him charged on the bottled in bond.

Q. He discussed with you the indictment against somebody in a liquor case? Told you that something had been scratched out concerning stump-hole whiskey, is that correct? A. Yes, sir.

Q. And the trial would concern two bottles of bottled in bond whiskey, is that correct? A. Yes, sir.

Q. And what did he say he wanted you to do in connection with it? A. If I could help him out any, to help him out.

Q. If you could help him out, he would like for you to do so? A. Yes, sir.

\* \* \*

Q. All right. Now Mr. DuBose, had Mr. Weinberg ever come to your home to see you before? A. Well, two years ago.

Q. All right. Two years ago. Were you drawn as a juror two years ago when he came? A. In this court, yes, sir.

Q. Yes, in this court. And what did he come to you concerning that time?

Mr. Keels: If your Honor pleases, I believe we were ruled to show cause in this particular instance.

Mr. Kilgo: If your Honor pleases, this testimony is to show whether or not the defendant is a constant visitor at his home and whether he had reason to be there other than in connection with this case.

The Court: Mr. Keels, I think it would be relevant: I think it would have some bearing as to whether or not he went there this time and for what purpose. I overrule the objection.

Q. Now, Mr. DuBose on the other trip about two years ago, what did it concern? A. About a fight.

Q. A fight involving who? A. A policeman; I don't know his name.

Q. A policeman? A. Yes, sir.

Q. Did it involve a case coming up in that term of court? A. Yes, sir.

Q. It did? A. Yes, sir.

Q. And had you been drawn as a juror for that term of Court? A. For that term, yes, sir.

Q. And Mr. Weinberg came to see you specifically about a case involving a fight with a policeman? A. Yes, sir.

Q. Now had he ever been to your home any other time if you know? A. Never had."

Juror Clarence Boseman, Jr., testified that on Sunday morning prior to Court appellant came to his home and that upon his request he entered his car where they had a conversation concerning Cecil Weinberg's case, a portion of the testimony being:

Q. All right, sir. What was the conversation as best you recall?

\* \* \*

A. Mr. Weinberg said that Cecil had a case coming up charged with selling whiskey and that some woman was involved and he said they didn't have her at the other trial and he understood they wasn't going to have her at this one and said he would like for Cecil to get a square deal.

Q. What else was said? He went into the facts of the case with you about a woman? A. Yes, sir, but nothing further than that.

\* \* \*

Q. But he did go into the circumstances about a woman being involved? A. Yes, sir.

Q. And said he wanted Cecil to get a fair deal? A. Yes, sir.

Q. Had Mr. Weinberg ever visited your home before that time? A. No, sir.

\* \* \*

*Cross Examination*

\* \* \*

Q. He merely made the statement to you that he hoped his boy would get a square deal in the court? A. Yes, sir.

Q. That is all he asked? A. Yes, sir.

*Re-direct Examination*

Q. Is there any doubt in your mind that he came to you with reference to this particular case? A. How's that now?

Q. Is there any doubt in your mind that the purpose of his visit was with reference to this case against his boy, Cecil? A. No, sir.

Q. Did he come there on any other business other than that? A. No.

\* \* \*

*Re-cross Examination*

\* \* \*

Mr. Kilgo: The Court will of course take notice of the fact that the criminal docket of the week involved shows a case against Cecil Weinberg and Allen Wright for a violation of the liquor law and I also ask the Court to take notice of the fact that approximately two years ago there was a case on the docket against Blake Weinberg for having a fight with a policeman in the town of Darlington.

The Court: With reference to striking something or marking out something, does the indictment show anything of that kind?

Mr. Kilgo: Yes, sir, the indictment itself does not show the matter referred to; your Honor ruled. Your Honor will recall that there were two charges in the indictment, one for illegal sale of alcoholic liquor, another count for storage of alcoholic liquor without proper revenue stamps affixed thereto; and the State moved to withdraw the count as to improper storage because that indictment was a prepared indictment designed to charge storage of bootleg liquor without stamps and I had neglected to amend that charge to read storage of alcoholic liquor for illegal purposes and that was the status of the indictment so announced in court and it is a part of the record."

Appellant's return admits having talked with the two jurors but is contrary to the foregoing on practically all important aspects. He denies any intention to corrupt but on the contrary asked only for a "fair trial."

"There are two kinds of contempts of Court: That which is committed in open Court and that which is committed out of view and hearing of the Court. In

the latter case, the offender must be allowed to offer evidence and argument in his defense, otherwise any judgment which the Court may pronounce will be absolutely void. Contempt of Court is a specific criminal offense; and a party charged therewith, though the proceeding is more or less summary in character, has the same inalienable right to be heard in his defense as he would against a charge of murder or any other crime. *McClatchy v. Superior Court of Sacramento County,* 119 Cal. 413, 51 P. 696, 39 L. R. A. 691. See also *Charles Cushman Co. v. Mackesy,* 135 Me. 490, 200 A. 505, 118 A. L. R. 148." *Long v. McMillan,* 226 S. C. 598, 86 S. E. (2d) 477, 482.

One is guilty of contempt whose conduct is such as ▮▮ tends to bring the authority and administration of the law into disrespect or disregard, or to interfere with or prejudice parties litigant or their witnesses during the litigations. Any conduct which is calculated to interfere with the proceedings, by assaulting litigants or witnesses within the precincts of the Court, or preventing or hindering, or endeavoring to prevent or hinder, them in their access to the Court or otherwise, is a contempt. The power of the Court in the matter of contempt cannot be defined within any limits, and the primary question in all cases of alleged contempt is whether there has or has not been an interference with the due administration of justice. For one to change the locks on the door of the courtroom, during adjournment of the Court, and thereafter refuse to allow the judge of the Court and his officers, and the parties to the suit on hearing before him, to enter the courtroom, is a contempt. *Dahnke v. People,* 168 Ill. 102, 48 N. E. 137, 139, 39 L. R. A. 197, citing Oswald, Contempt, pp. 3, 4, 27, 70.

Where there is deliberate purpose to corrupt admin- ▮▮ istration of justice, accompanied by definite overt act on part of contemnor, designed to carry purpose into effect, notwithstanding failure of design, one is guilty of contempt, *Brewer v. State,* 176 Miss. 803, 170 So. 540, 541; and the power to punish for contempt is limited to the main-

tenance of order and decorum in Court proceedings, to the enforcement of its writs and orders, and punishment of acts done out of Court tending to obstruct the due administration of justice. *Flannagan v. Jepson,* 177 Iowa 393, 158 N. W. 641, 643, L. R. A. 1918E, 548.

One interfering with or attempting to interfere with the proper execution of legal process, or with an attempt, either on the bench or off, to influence the Court in its decision of a matter pending before it may be held guilty of contempt, *Berger v. State,* 29 Ohio App. 434, 163 N. E. 627, 628; and all willful attempts, of whatever nature, seeking to improperly influence jurors in the impartial discharge of their duties, whether it be by conversations or discussions, or attempts to bribe, constitute contempts. *Emery v. State,* 78 Neb. 547, 111 N. W. 374, 9 L. R. A., N. S., 1124.

A constructive contempt of a criminal nature is a contempt committed not in the actual presence of or so near the Court as to interrupt its proceedings, but which nevertheless tends to impede or prevent the due administration of justice. *People v. Mortenson,* 224 Ill. App. 221; and anything done or said in or out of the presence of the Court, which impedes or obstructs it in the decision of a pending cause, or in the execution, by authorized means, of its judgments, may be punished as a contempt. *Fellman v. Mercantile Fire & Marine Ins. Co.,* 116 La. 723, 41 So. 49.

All willful attempts of whatever nature, seeking to improperly influence jurors, whether by conversation or attempts to bribe, obstruct and tend to hinder due administration of justice therefore constitute contempt. *Ex parte Privitt,* 127 Tex. Cr. R. 475, 77 S. W. (2d) 663, 664.

Jurors Boseman and DuBose were not members of the jury panel which tried the case of *State v. Weinberg and Allen,* but this is of no comfort to appellant as the evidence is susceptible of no reasonable doubt that he willfully attempted to influence and corrupt these

jurors with the view that they would be chosen on the panel to hear the case and such acts were a deliberate attempt to impede and prevent the due administration of justice. We cannot condemn too strongly any attempted interference with the jury, whether the attempt be successful or not; not even the love of a father for his son is justification for appellant's conduct, and the hearing Judge's decision that appellant was guilty of contempt was justified by the evidence. Jurors Boseman and DuBose are to be commended for reporting appellant's conduct to the trial Judge as the very heart of our system of jurisprudence is the jury; an unjust jury means an unjust Court.

In the recent case of *State v. Goff,* 228 S. C. 17, 88 S. E. (2d) 788, 790, one Goff was found guilty under the common law of *direct contempt.* In the instant case, we are concerned with *constructive contempt,* and there is nothing in the record to reveal whether the Court acted under the common law or the statute. In the *Goff case, supra,* this Court used the following language:

"There can be no doubt about the power of the courts of general jurisdiction in this State to punish for contempt. This power is not derived from any statute but from the common law which from its inception recognized this implied and necessary power, without which contumacious conduct could well destroy the authority of any court." And quoted with approval from *Ex parte Robinson,* 19 Wall. 505, 510, 86 U. S. 505, 22 L. Ed. 205, 207, as follows:

"* * * 'The power to punish for contempts is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts; and consequently to the due administration of justice. * * *' " See also *Fishback v. State,* 131 Ind. 304, 318, 30 N. E. 1088, 1090.

There can be no doubt, however, that the legislature has power to impose reasonable limits on the power of a Court created by the constitution to punish for

contempt. 12 Am. Jur., Contempt, Section 49, page 424; see also 1955 Cumulative Supplement, 44; *Atwell v. United States*, 4 Cir., 162 F. 97, 17 L. R. A., N. S., 1049; and annotations, 121 A. L. R. 237, 239.

Appellant also contends that the punishment should have been in the alternative and cites the case of *Greenwood County v. Shay*, 202 S. C. 16, 23 S. E. (2d) 825, 828. A review of which reveals that the defendant was sentenced to a fine and imprisonment, and this Court in setting aside the sentence stated that it was "excessive and unwarranted by law, in that the sentence is not in the alternative,—that is, fine or imprisonment" which disposed of the question on appeal in that case. The language of the statute under consideration, 15-231.1 of the Code of Laws of South Carolina, 1952, is:

"The circuit court may punish by fine or imprisonment, at the discretion of the court, all contempts of authority in any cause or hearing before the same."

The annotations appearing under this section erroneously cite the *Shay case* for the proposition that it is mandatory that the punishment be in the alternative. It is evident that while the Court was correct in its holding in the *Shay case* that both fine and imprisonment could not be imposed under the statute, the annotation is incorrect in that it states it is mandatory the sentence be in the alternative. It is clear from the wording of the statute when given its ordinary meaning that the Court might have: First, sentenced the contemnor to pay a fine; second, sentenced him to imprisonment; and, third, sentenced him to pay a fine or in the alternative serve a term of imprisonment. Any other construction would permit the defendant to choose the fine or imprisonment whereas the alternative lies with the sentencing Judge and not the defendant. *State v. Davis*, 86 S. C. 208, 68 S. E. 532; *State v. Brandon*, 210 S. C. 495, 43 S. E. (2d) 449.

The trial Judge in the instant case did not specifically state whether or not the foregoing proceedings were under

the statute or the common law, and no point was made thereabout at the time of the hearing. However, in our opinion, it is of no consequence as in either event it was within his power to impose a sentence of imprisonment without the alternative of a fine.

We are of the opinion that all exceptions should be dismissed, and it is so ordered. Affirmed.

OXNER and LEGGE, JJ., and T. B. GRENEKER, Acting Associate Justice, concur.

STUKES, C. J., concurs in result.