18589

The STATE, Respondent, v. Joseph L. JOHNSON and Joseph G. Grace, Appellants

(152 S. E. (2d) 669)

*Messrs. Pritchard, Myers & Morrison,* of Charleston, *for Appellants,*

*Messrs. Arthur G. Howe, Solicitor,* and *A. Arthur Rosenblum, Asst. Solicitor,* of Charleston, *for Respondent,*

January 3, 1967.

LEWIS, Justice.

The defendants Joseph L. Johnson and Joseph G. Grace have appealed from their conviction of contempt of court for alleged jury tampering. They contend, generally, that their convictions should be set aside because (1) neither the charges nor the evidence constitute contempt, and (2) prejudicial error was committed in the conduct of the trial.

On September 14, 1964 the Charleston County Grand Jury indicted Joseph L. Johnson, Jr., (son and nephew, respectively of the defendants Joseph L. Johnson and Joseph G. Grace), along with two others, for rape, assault with intent to ravish, assault and battery of a high and aggravated nature, and conspiracy. When the case was called for trial on March 3, 1965, the jurors were examined on their *voir dire*. During the examination of the jurors, informamation was divulged indicating that improper contacts had been made with a number of the prospective jurors. However, a jury was selected and the case proceeded to trial, resulting in a verdict of acquittal. Issues in that case, arising out of a motion by the State for a new trial upon the ground of alleged improper contact with the jurors, were before us in *State v. Johnson et al.*, S. C., 149 S. E. (2d) 348.

On March 8, 1965, after the foregoing verdict of acquittal, the trial judge, because of the information developed in the *voir dire* examination of the jurors, brought the entire panel before him and each member was examined under oath by the judge and the solicitor as to possible contacts with them. This examination was in the nature of an investigation or inquiry to determine the extent of any contacts with the jurors and was made in the absence of, and without notice to, the present defendants or their counsel. Of course, notice to the defendants of the March 8th hearing was not required, since it was not a trial but solely a preliminary investigation to determine if grounds existed for the institution of proceedings for contempt.

Upon the foregoing examination, a juror, Henry Deas, testified as to a visit made to his home by the defendant Johnson and his wife. The Deas and Johnson families were neighbors and good friends. The testimony of Deas was to the effect that the defendant Johnson and his wife had visited in his home after he had been summoned as a juror for the term of court at which their son was to be tried, and discussed the case with the wife of Deas. Johnson and his wife had heard that Deas might be prejudiced against their son and they wanted to find out the cause of any such prejudice. The defendant Johnson was present but did not participate actively in the conversation, the discussion being between Mrs. Johnson and Mrs. Deas. During the conversation Mrs. Deas was told that their son was innocent. While the juror Deas was not at home at the time, the information revealed to Mrs. Deas was communicated to him by her.

In addition, a juror, B. L. Matthews, testified at the March 8th inquiry as to a visit made to his home by the defendant Grace and his wife after Matthews had been summoned as a juror. The Matthews and Grace families were good friends. The juror Matthews testified that the defendant Grace and his wife made a visit to his home and discussed the pending prosecution of their nephew, Joseph L. Johnson, Jr., for rape. During the conversation Matthews was told that their nephew was innocent; that the prosecutrix had signed an affidavit, which could not be introduced in evidence, indicating a desire to withdraw the charges; and that the NAACP was watching this particular case as a similar one was coming up in the near future.

While Deas and Matthews were members of the general panel of jurors, they did not serve on the jury which tried Joseph L. Johnson, Jr.

Upon the basis of the testimony of the jurors Deas and Matthews at the March 8th inquiry, rules were issued by the trial judge directed to the defendants Johnson and Grace requiring them to appear before the Court on March 18,

1965 to show cause why they should not be held in contempt of court for contacting and attempting to improperly and illegally influence the juror Deas, in the instance of defendant Johnson, and the juror Matthews, in the instance of defendant Grace. Charges against the wives of these defendants in connection with this and other incidents were disposed of in separate cases and are not here involved. The foregoing rules were issued in response to petitions by the solicitor, to which were attached transcripts of the sworn testimony of the above jurors taken before the trial judge at the time of the inquiry into the matter on March 8th.

A rule to show cause and the petition of the solicitor, to which was attached in each case a transcript of the sworn testimony of the juror, whom it was alleged the particular defendant had attempted to improperly influence, were duly served upon each defendant. The defendants first contend that the rule, petition and the attached testimony were insufficient to charge a contempt. The charge against these defendants was that of constructive contempt, that is, the alleged contemptuous conduct did not occur in the presence of the court. Contempt proceedings involving such conduct are properly begun by a rule to show cause which must be based upon an affidavit or verified petition alleging facts sufficient to warrant the issuance of such order. *State v. Blackwell,* 10 S. C. 35; *Hornsby v. Hornsby,* 187 S. C. 463, 198 S. E. 29.

The general principles governing the institution of contempt proceedings based upon conduct committed out of the presence of the court are thus stated in the *Hornsby* case:

"Of course, as stated in 13 C. J. 68, 'before a person can be found guilty of contempt not committed in the presence of the Court, he must have due and reasonable notice of the proceeding. A rule to show cause, an attachment, or other process should issue.' And it is said in *State v. Nathans,* 49 S. C. 199, 27 S. E. 52, 57, 58, that 'the almost universal method by which contempt proceedings are begun

is by affidavit, and an examination of the authorities will generally disclose that in all contempt proceedings, save for such as are committed in the court's immediate presence, an affidavit is essential.' The verified petition of the party applying for a rule to show cause, however, is a substantial compliance with the principle of law above stated, when and if the petition alleges facts sufficient upon which to base the issuance of such order."

These proceedings were begun by the issuance of a rule based upon the petition of the solicitor, to which was attached a transcript of the sworn testimony of the juror allegedly contacted. The petition of the solicitor with the sworn testimony of the juror attached was in substantial compliance with the foregoing principles.

In determining whether the facts stated were sufficient to allege a contempt, the rule, petition and the attached sworn testimony of the juror must be construed together.

We have held that "all willful attempts, of whatever nature, seeking to improperly influence jurors in the impartial discharge of their duties, whether it be by conversations or discussions, or attempts to bribe, constitute contempts." *State v. Weinberg,* 229 S. C. 286, 92 S. E. (2d) 842. We further stated in *Weinberg* that "[w]here there is deliberate purpose to corrupt administration of justice, accompanied by definite overt act on part of contemnor, designed to carry purpose into effect, notwithstanding failure of design, one is guilty of contempt." And attempts to influence a member of the general jury panel is regarded as a contempt to the same extent as tampering with jurors actually sitting in the trial of a case. *State v. Weinberg, supra.*

The defendant Johnson contends that the rule, petition and transcript of testimony served upon him were insufficient to charge a contempt in that (1) it was alleged that the contact was made with the juror's wife, and not the juror,

and (2) it appears that the defendant's wife, and not the defendant, actually discussed the case with the juror's wife.

The papers served upon the defendant Johnson, in effect, charged him with having attempted to improperly influence the juror Deas; that in doing so the defendant and his wife made a visit to the juror's home for the purpose of discussing the case; that the juror was not at home but the wife of the defendant, with defendant present, discussed the case with the juror's wife and told her that their son was innocent; and that the purposes of the visit and substance of the conversation were subsequently communicated to the juror by his wife.

The foregoing was sufficient to charge a contempt of court. The fact that the allegations showed that the defendant Johnson had no personal contact with the juror Deas is not fatal to the charge. *Brewer v. State,* 176 Miss. 803, 170 So. 540; *Summers v. State,* 66 Ga. App. 648, 19 S. E. (2d) 28; *Hurley v. Commonwealth,* 188 Mass. 443, 74 N. E. 677. The discussion of the case with the juror's wife was an overt act which in the normal and expected course of things would result in the communication of the information by the wife to her husband. *Summers v. State, supra.* Allegations relative to the purpose of the visit to the juror's home by defendant and his wife and the defendant's continued presence throughout the conversation sufficiently charged his participation in the offense.

What has been said relative to the sufficiency of the charges against the defendant Johnson are equally applicable to those made against the defendant Grace. The allegations contained in the moving papers in both instances sufficiently charged a contempt and fairly advised the defendants of the charges being made against them.

Upon the service of the rule and petition, together with the transcript of the juror's sworn testimony, each of the defendants filed a written return in which they admitted the testimony of the jurors attached to the respective rules, but denied any intention to obstruct the due administration

of justice. The return of each defendant also set forth his version of what transpired during the visit to the home of the juror; and each alleged, in effect, that the visit was the idea of the wife, neither knew of the purpose of the call at the juror's home until they arrived, and neither participated in the conversation.

The charges against the defendants were tried together. When the cases were called for trial, the solicitor took the position that the admission by the defendants in their return of the truth of the testimony of the jurors, upon which the rules had been issued, made out a case against the defendants for contempt of court and required no further proof on the part of the State. The State accordingly rested its case upon the testimony attached to the rules, which had been admitted in the returns. The defendants take the position that their returns were sufficient and the trial judge should have dismissed the rules upon the failure of the State to offer further testimony. This question involves the effect of the admissions made in the returns relative to the testimony attached to the rules and the sufficiency of such testimony to sustain the charges against the defendants.

We have held that the charges here are criminal in nature, *State v. Weinberg, supra;* and the burden of proof in such cases is upon the State to prove the guilt of the defendants beyond a reasonable doubt, 17 Am. Jur. (2d), Contempt, Section 98.

When the rules to show cause were served upon the defendants, they were required to make a return to the charges against them. If the return in such cases admits the charges, of course, it is tantamount to a guilty plea and no further proof of guilt is required. If, on the other hand, the return is a denial of the charges, it is the same as a plea of not guilty and the State is required to go forward with its proof. In other words, the return of the defendants to the charges determines the proof required on the part of the State. Allegations made in the charge which are admitted in the return may be deemed true and require no further proof on the part of the State.

The plea of the defendants to the charges was made in the written returns filed by them. The sworn testimony of the jurors was the basis of the charges against the defendants. This testimony was admitted by the returns of the defendants to, be true. These admissions on the part of the defendants were binding on them and eliminated the necessity of further initial proof on the part of the State of any fact established by such testimony.

The only issue made by the returns related to the intent or purpose of the defendants. We stated in *State v. Goff*, 228 S. C. 17, 88 S. E. (2d) 788, 52 A. L. R. (2d) 1292, that "[t]he intent or purpose of the contemnor must necessarily be ascertained from all of the acts, words and circumstances surrounding the occurrence. As has frequently been said, intent is subjective and not objective."

We have heretofore set forth the testimony of the jurors. Further review of it is unnecessary, except to point out that the returns of the defendants constituted an admission of facts from which the inference could be drawn that the defendants knowingly accompanied their wives to the homes of the prospective jurors for the sole purpose of discussing the case with the jurors and that they, at least, added their presence and aid to the discussion of the case to such an extent as to make them a participant therein.

The denial in their returns of any intent to obstruct the administration of justice was not conclusive on that issue, especially in view of the admissions by the defendants of facts from which the contrary conclusion might be drawn. Since the defendants had admitted facts from which an inference of their guilt could be properly drawn, the State was not required to produce other testimony to establish the fact.

The trial judge properly held that the admitted facts and circumstances were sufficient to establish the charges of contempt without the necessity of further proof.

It is contended however that the failure of the State ■ to present the jurors whose testimony had been admitted, as witnesses at the trial deprived the defendants of "the right to be confronted by, and to cross examine, the principal witnesses against them." There was no assertion by the defendants in the lower court of any right to cross examine the jurors nor any request that they be permitted to do so. The question is raised for the first time in this appeal.

The admission by the defendants of the testimony ■ previously given by the jurors eliminated any necessity for the State to call them as witnesses to prove its case. Any desire of the defendants to cross examine the jurors, therefore, could not have been known unless it was called to the attention of the trial judge. The right of cross-examination of an adverse witness may be waived and the absence of any request or effort by the defendants to cross examine the jurors must be taken as a waiver by them of the claimed right. *State v. Rouse,* 138 S. C. 98, 135 S. E. 641; *Lewis v. Hamilton Veneer Company,* 206 S. C. 349, 34 S. E. (2d) 220.

When the State rested its case, the defendants were ■ called as witnesses in their behalf. They now contend that they were required to testify by the trial judge against their will and were thereby compelled to be witnesses against themselves.

The defendants testified following a discussion between their counsel and the court as to the effect of the returns filed by them, during which the court was first told by counsel that the defendants would not testify. Later in the discussion, when it became apparant that the court construed the returns as making admissions beyond those contended by defendants' counsel, the court stated to counsel: "You better let him go on the stand, then." Following this statement, the defendant Grace and, later, the defendant Johnson were called as witnesses and testified substantially as they had alleged in their return. The foregoing forms the sole

basis for the contention that the defendants were forced to testify against their will.

The quoted statement by the trial judge was not a requirement that the defendants testify. Viewed in its proper context, it was nothing more than a suggestion to defendants' counsel, brought about by the realization on the part of the court that counsel was under a misapprehension as to the extent of the admissions made in the returns.

The contention of the defendants that they were forced to testify cannot be sustained in view of the clear showing in the record that they voluntarily elected to testify in their own behalf.

Finally, the defendants contend that under all of the testimony the lower court erred in finding them guilty.

In addition to the admissions in the returns, the trial judge had before him the testimony of the defendants and the wife of the juror Deas, Mrs. Deas being called as a witness for the State after the defendant Grace had testified. The testimony of Mrs. Deas corroborated, substantially, the testimony attached to the petition of the solicitor and that of the defendants and the allegations of their returns.

This is a criminal contempt and the trial judge sat as the trier of the facts. Where the facts are in dispute and there is sufficient evidence worthy of belief to support the factual findings of the trial judge, this court will not disturb those findings. *State v. Goff, supra,* 228 S. C. 17, 88 S. E. (2d) 788, 52 A. L. R. (2d) 1292.

The defendants deny that they had any intent to improperly influence the jurors. They say that they merely trailed along and sat by while their wives discussed the case. Under all of the facts and circumstances we have great difficulty, as apparently the trial judge did, in accepting the proposition that the defendants were just carried along by their wives on the visits to the jurors' homes and innocently sat by until the wives had finished their mission. The evidence presented factual issues for de-

termination by the trial judge and the testimony previously reviewed amply sustained his conclusion that the defendants knowingly participated in an attempt to improperly influence the jurors.

Upon finding the defendants guilty of contempt, the trial judge imposed a sentence as to each, of three (3) months in the Charleston County Jail. Exception was filed charging that the sentence constituted cruel and unusual punishment. This exception was not argued in the briefs and is therefore considered abandoned. If preserved for review, however, it would be without merit. *State v. Weinberg, supra.*

All exceptions are overruled and the judgments affirmed.

Moss, C. J., BRAILSFORD, J., and STEVE C. GRIFFITH and BRUCE LITTLEJOHN, Acting Associate Justices, concur.