20532

The STATE, Respondent, v. Cleo SCOTT, Appellant.

(238 S. E. (2d) 217)

*B. Henderson Johnson, Jr.,* of Aiken, *for Appellant,*

*Daniel R. McLeod, Atty. Gen.,* and *Joseph R. Barker, Asst. Atty. Gen.,* of Columbia, and *Sylvia W. Westerdahl,* of Aiken, *for Respondent,* 

October 19, 1977.

Lewis, Chief Justice:

This is an appeal from an order of the lower court adjudging appellant, a former Clerk of Court of Aiken County, in contempt of court and imposing a sentence of ten (10) days confinement in the county jail for allegedly improperly contacting a member of the grand jury. She contends that her conviction should be set aside because that was no evidence to show any attempt on her part to illegally influence the grand jury or an intent to obstruct justice. The material facts are not in dispute.

Appellant is a former Clerk of Court for Aiken County and when the office of clerk of court was divided in 1975 into two sections (clerk of court and register of mesne conveyances), appellant became the Register of Mesne Conveyances, the position she occupied when the present events occurred.

On December 6, 1976, the grand jury for Aiken County was in session in the courthouse in the performance of their duties in connection with a term of the General Sessions Court then in progress. When the incident in question arose, the members of the grand jury were proceeding from their room on the first floor of the courthouse through a hallway in order to go upstairs into the courtroom to make a report to the court. Appellant was standing in the hallway at the time talking to a court bailiff and a deputy sheriff. When Mr. Wilmot Edney, a member of the grand jury and a long-

time acquaintance of appellant, passed appellant in the hallway, they exchanged greetings and talked to each other. Their conversation was set forth in an affidavit of Mr. Edney as follows:

"That the defendant (appellant) herein, Cleo Scott, did on the 6th day of December, 1976, contact me . . ., and inquire of me as to whether the grand jury was discussing the aforesaid Mrs. Cleo Scott."

The conversation between appellant and the grand juror was in the presence of the other jurors and was reported by another juror to the Foreman who, in turn, reported it to the trial judge. This proceeding followed.

Mr. Edney, the grand juror contacted, was the sole witness for the State at the contempt hearing and gave the following account of the conversation between him and appellant, referred to by him as "Miss Cleo":

"The whole body (grand jury), we were coming up here, and Miss Cleo spoke to me. She said, 'Hi Wilmot.', and I said, 'Hi, Miss Cleo.' She said, 'Is they saying anything 'bout me?', and I said, 'No, M'am.' I said, 'How you getting along, Miss Cleo?', and she said, 'Bad.' So I said, 'What's the matter?', and she said 'I lost in the election.' I said, 'I'm sorry', and that's all was said."

Mr. Edney further testified that appellant "didn't pick (him) for any information" and that other members of the grand jury who were present "kind of laughed" when she said: "Y'all are not talking about me in there, are you?"

Appellant testified that the question by her to the juror was done in a joking manner, with no intent or purpose to induce him to violate his oath of secrecy or to influence him in the performance of his duties.

The trial judge found that appellant was, as a former clerk of court, familiar with the proceedings of the grand juries and

3. That the defendant (appellant), on December 6, 1976, asked a member of the Grand Jury a specific question concerning the secret proceedings of the Grand Jury, to wit: Whether the Grand Jury was discussing the defendant (appellant), Cleo Scott;

4. That said grand juror responded to the aforesaid question and thereby violated his oath of secrecy;

5. That the conduct of the defendant (appellant) herein, in publicly accosting and questioning the aforesaid grand juror produced an appearance of gross impropriety; and

6. That, taking into consideration all the facts and circumstances of the defendant's (appellant's) conduct and her background as a public official, I find her conduct to be in contempt of court.

The order of the trial judge made no finding that appellant, as charged in the petition upon which this proceeding was based, contacted or unlawfully communicated with the grand juror in an attempt to improperly and illegally influence him in his deliberations or that the contact was made with the intent and purpose of obstructing and hindering the due administration of justice. On the contrary, the trial judge stated, after the testimony was completed and in response to argument of counsel that appellant had no intent to influence the juror: "I agree. I don't think that she intended to obstruct the due administration of justice. I don't think she did that, but I have to look at the overall picture."

In essence, the trial judge found that the appellant had no intent to obstruct the due administration of justice, but that her actions gave the appearance of impropriety, for which she was guilty of contempt. Appellant argues that the appearance of impropriety where, as here, there is a finding that such alleged impropriety was without intent to hinder and obstruct justice, is insufficient to support a judgment for contempt. We agree and reverse.

We have held that intent is a necessary element in criminal contempt. *State v. Weinberg,* 229 S. C. 286, 92 S. E. (2d) 842; *State v. Johnson,* 249 S. C. 1, 152 S. E. (2d) 669. Here the trial judge stated that he found no intent "to obstruct the due administration of justice" and his written order conformably made no finding of improper intent or purpose. This being so, there was nothing to support the judgment of contempt.

Respondent has asked that we reconsider the rule requiring intent as an element of criminal contempt. We are convinced from a review of our decisions touching the question that the rule adopted in *Weinberg* and *Johnson, supra,* is sound and adhere to it.

It is argued however, that the testimony is sufficient to support a finding of wrongful intent on the part of appellant. Of course, intent may be inferred from all of the facts and circumstances. Whether standing alone the encounter of appellant with the juror would give rise to an inference of contemptuous conduct need not be pursued, because the trial judge has specifically stated that no such intent existed.

The judgment is accordingly reversed.

NESS, RHODES and GREGORY, JJ., concur.

LITTLEJOHN, J., dissents.

LITTLEJOHN, Justice (dissenting) :

I respectfully dissent and would affirm the lower court.

While the authority of a trial judge to hold in contempt should be used judiciously and sparingly, and only upon proper proof, I cannot say that the ruling of the trial judge under the facts before him were not adequately supported by the evidence.

Here we have a lady who worked in the office of the clerk of court for 18 years and admits that she was well aware of the fact that grand jury proceedings were secret and that one should not inquire about cases before the grand jury, thereby causing a grand juror to violate his oath of secrecy.

At the time of the juror contact, the appellant had been tried and acquitted on a criminal charge. Counsel before us, in open court, has stated that she is now indicted again. The trial judge was warranted in his obvious conclusion that she was attempting to extract information from a member of the grand jury relative to her possible accusation. The intent referred to in the majority opinion, as indicated in the case of *State v. Weinberg*, 229 S. C. 286, 292 S. E. (2d) 842 (1956), is supplied by the fact that she intended to question a grand juror relative to information she knew to be secret. At that point there was certainly no reason for her to attempt to influence a grand juror if they were not talking about her. Inasmuch as the juror told her that they had not been talking about her, there was, of course, no reason for her to pursue the matter further.

In *State v. Goff*, 228 S. C. 17, 88 S. E. (2d) 788, 52 A. L. R. (2d) 1291 (1955), this Court stated, "The intent or purpose of the contemptor must necessarily be ascertained from all of the action, words and circumstances surrounding the occurrence. As has frequently been said, intent is subjective and not objective."

In my view, from the ruling of the lower court, it is implicit that the judge found the conduct of the appellant to be with improper intent. I agree.