## 20591

The STATE, Respondent, v. Donnie BOWERS, Appellant.

(241 S. E. (2d) 409)

*Henry Summerall, Jr.,* of Aiken, and *Henry W. Kirkland,* of Columbia, *for Appellant,*

*Daniel R. McLeod, Atty. Gen.,* and *Joseph R. Barker, Asst. Atty. Gen.,* of Columbia, *for Respondent,*

January 30, 1978.

RHODES, Justice:

This appeal is from convictions for contempt of court on two charges of jury tampering. The trial court imposed a sentence of thirty (30) days imprisonment in the Aiken County Jail on each of the two charges to be served consecutively. We affirm.

On June 22, 1976, the Honorable Rodney A. Peeples, Resident Judge of the Second Judicial Circuit, while presiding over a term of General Sessions Court in Aiken County, inquired of the jury panel as to whether any of them had been contacted concerning the case of *State v. Cleo Scott,* which trial was being commenced at such time. In response to this inquiry Roy Horton and Lester Crider, members of the jury panel, indicated having been contacted.

Judge Peeples immediately conducted an inquiry of these two jurors in Chambers in the course of which the two jurors stated that Donnie Bowers, the appellant, had telephoned them and discussed Cleo Scott's case. Judge Peeples set aside the jurors who had been contacted, ruled that the jury panel had not been otherwise tainted, and proceeded with the trial.

Cleo Scott, who was indicted for embezzlement of funds from Aiken County, was acquitted of the charges against her by the jury on June 23, 1976.

Thereafter, contempt proceedings were instituted against the appellant by petition of the Attorney General dated November 23, 1976. Based on this petition, the late Honorable E. Harry Agnew, Presiding Judge, issued, on December 1, 1976, a Rule to Show Cause why the appellant should not be attached for contempt of court for contacting the two jurors, Roy Horton and Lester Crider, "in an attempt and for the purpose of improperly influencing the said jurors in the case of *State v. Cleo Scott,* and with the further intent and purpose of obstructing the due administration of justice in this Court."

The appellant made return to the Rule to Show Cause alleging that: (1) the State's delay from June 22, 1976 to December 1, 1976 in taking proceedings against the appellant denied his constitutional right to a speedy trial; (2) admitted that he had made a telephone call to Roy Horton and Lester Crider, but denied that his actions were done with any wrongful or unlawful intent and purpose.

The matter was tried by Judge Agnew in Aiken as Presiding Judge of the Second Judicial Circuit, sitting without jury, on December 13, 1976.

In Question I of appellant's brief, he argues that, by the time the contempt proceedings were held, the trial court had lost jurisdiction to attach the appellant for contempt. That argument is based on the alternative grounds (A) that a court's power to attack for contempt ends when the case in connection with which the contempt occurred has ended; and/or (B) that such power ends when an unreasonable amount of time elapses between the contempt and the attachment.

The contention in alternative A above is patently without merit. To apply the suggested rule to the present case would require that action be taken by

the State on the day after it was apprized of jury tampering since this was the day on which the case of *State v. Cleo Scott* was terminated. The cases and authorities cited in appellant's brief are not supportive of his position in the context of the present case. Most of appellant's authority involves *direct* contempts rather than *indirect* contempts with which the present case is concerned. The only South Carolina case cited by the appellant, *Mongie v. Cheney,* 1 Hill 145, 19 S. C. L. 145, is distinguishable in the facts presented as well as on the grounds that it involved an entirely different form of contempt proceeding. *Mongie* involved a statutory contempt proceeding against a sheriff for failure to properly levy and execute.

Alternative (B) above is essentially a correct statement of the law as it applies to this case. We quote with approval the following from 17 C. J. S. *Contempt* § 67:

Contempt proceedings must be commenced within the time fixed by statute, but in the absence of such a provision, mere delay in instituting the proceedings is not a defense, unless it is prejudicial to defendant, or unreasonable in duration.

Since there is no statute limiting the time in which contempt proceedings may be brought in South Carolina, a correct statement of the law in this State is that delay is no defense unless such delay is unreasonable or the defendant is prejudiced thereby.

We find neither of these elements existing in the present case. Although the State was aware that jury tampering had occurred on June 22, 1976, it was properly deemed advisable to fully investigate the matter, to interview those jurors who had come forward as well as the other members of the panel, and to interview the appellant and the others who stood accused of tampering. Considering the time necessarily involved in such an investiga-

tion, we do not deem the delay until November 1976 of such duration as to constitute a defense to the charges. Additionally, appellant has made no showing of prejudice by such delay.

The contempt proceeding against appellant resulted from two telephone calls made by the appellant to prospective jurors. Appellant knew that both men had been summoned for jury duty. He argues in the second question of his brief that his actions cannot constitute contempt since there was no Court of General Sessions sitting in Aiken County at the time of these actions. His position is that in order for an act to constitute contempt of court there must be contemporaneously a court in session capable of being contemned at the time the act is committed.

Appellant's position ignores the accepted rule in this area, stated in 17 C. J. S. *Contempt* § 22:

All willful attempts of whatever nature, seeking to influence jurors improperly in the impartial discharge of their duties . . . constitute contempt . . . . The rule applies to attempts to influence prospective jurors, as, for instance, persons who have been drawn, or summoned to act, as jurors, although not sworn to try the particular case with reference to which their decision is sought to be influenced
. . . .

The cases of *State v. Weinberg,* 229 S. C. 286, 92 S. E. (2d) 842 (1956) and *State v. Johnson,* 249 S. C. 1, 152 S. E. (2d) 669 (1967), both involved contacts of prospective jurors and both recognized that attempts to influence members of the general panel constitute contempt just as do attempts to influence jurors sitting on the particular case. The case of *State v. Maddox,* 80 S. C. 452, 61 S. E. 964 (1908) is likewise in accord with the general rule cited above. To adopt the position urged by appellant would seriously undermine the integrity of the jury system.

Appellant further contends under Question II that his actions, if criminal at all, could only be punished under Section 16-9-260, 1976 Code of Laws of South Carolina. This contention is likewise without merit. The cited section refers to attempts to corrupt jurors through the use of gifts or gratuities. As this Court held in the case of *In Re Moore,* 79 S. C. 399, 60 S. E. 947 (1908), attempts, such as these in the instant case, to influence jurors through personal influence rather than by the use of gifts or gratuities do not fall under § 16-9-260; rather, they are punishable as contempts.

Under the Third Question it is argued that, since his contumacious conduct occurred while Judge Peeples was presiding, Judge Agnew, who succeeded him, was without jurisdiction to preside over the contempt proceedings. This assertion ignores the nature of the State's Circuit Court system. The contempts here involved were not against the individual judge who happened to be presiding at the time of their occurrence. The contempts were against the General Sessions Court of Aiken County. Judge Agnew was officially assigned as the presiding judge of that court at the time the contempt proceedings were brought and heard. He clearly had jurisdiction.

Under Question IV appellant argues that the evidence was insufficient to support the trial judge's finding of contempt. We have held that the charges here are criminal in nature and the burden of proof is upon the State to prove the guilt of the defendant beyond a reasonable doubt. *State v. Johnson, supra; State v. Weinberg, supra;* 17 Am. Jur. 2d, *Contempt,* § 98. This is a criminal contempt and the trial judge sat as trier of the facts. Where there is sufficient evidence worthy of belief, this Court will not disturb those findings. *State v. Johnson, supra.*

In *State v. Weinberg,* we held that "all willful attempts, of whatever nature, seeking to improperly influence jurors in the impartial discharge of their

duties, whether it be by conversations or discussions, or attempts to bribe, constitute contempts." It was further stated in *Weinberg* that "[w]here there is deliberate purpose to corrupt administration of justice, accompanied by definite overt act on part of contemnor, designed to carry purpose into effect, notwithstanding failure of design, one is guilty of contempt . . . ."

With these guiding principles in mind, we proceed to an examination of the testimony. The evidence against the appellant consisted of the testimony of the two jurors whom he had contacted.

Roy Horton testified he was summoned on or about June 14, 1976, to appear for petit jury duty in Aiken County during the week of June 21, 1976. After receiving his summons but before the week his jury duty began, Horton received a telephone call from the appellant. Horton knew the appellant through their association as basketball officials, but the two men did not see each other regularly during the off-season.

Appellant told Horton, during the telephone conversation that he had seen his name on the jury list. He then told Horton that he was "very close" to Cleo Scott and that he wanted him to approach the trial with an "open mind".

Lester Crider was also summoned to appear for petit jury duty the week of June 21, 1976, and he also received a call from the appellant prior to that week. Although the two had known each other casually for twelve to fourteen years, they had not been in communication for the past three or four years. He told Crider that he had seen his name on the jury list; that he knew Cleo Scott well; that Cleo Scott was well-off and did not need the money; that although he was not attempting to influence Crider, he was real concerned about Cleo Scott and her family and that he wanted Crider to appear with an "open mind".

The appellant testified that Cleo Scott had shown him a jury list and asked him to tell her what jurors he felt might

be unfavorable to her. He testified that he called the jurors merely to advise them of their having been called for jury service in order that they could make arrangements to be excused from work. He further confirmed that he seldom saw Horton at that time of the year, and that he had not seen Crider in several years.

The testimony in this case is undisputed in all material respects. The sole issue that had to be resolved by the trial judge was the intent or purpose of the defendant. In this regard *State v. Goff,* 228 S. C. 17, 88 S. E. (2d) 788 (1955) states: "The intent or purpose of the contemnor must necessarily be ascertained from all of the acts, words and circumstances surrounding the occurrence. As has frequently been said, intent is subjective and not objective."

A simple reading of the testimony given by the two jurors, in the light of the surrounding circumstances of this case, makes manifest the validity of the finding by the trial judge that the appellant contacted the two jurors for the purpose of influencing them in their deliberations. We find no need to belabor this testimony as it is abundantly sufficient to support conviction.

In Question V of his brief, appellant contends that the delay involved in this case deprived him of his constitutional right to a speedy trial.

In *Barker v. Wingo,* 407 U. S. 514, 92 S. Ct. 2182, 33 L. Ed. (2d) 101 (1972), there are four factors suggested to be assessed in determining whether a defendant has been deprived of the right to a speedy trial. These are: (1) length of delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and, (4) prejudice to the defendant.

Here, the *length of delay* was not unduly long. We have already dealt with this subject adversely to appellant under Question I. As to the *reasons for the delay,* the delay was minimal and the reasons causing it were

meritorious as set forth herein under Question I. *The defendant's assertion of his right* was timely and properly made. The record before us is devoid of any showing of *prejudice to the defendant* by reason of any delay.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.