*274 CHIEF JUSTICE PLEICONES:
I respectfully dissent. Like the majority, I assume the State violated Rule 5, SCRCrimP, when it impeached Respondent with evidence it failed to disclose prior to trial. However, unlike the majority, I believe the PCR judge applied the correct standard of law in assessing whether the State’s Rule 5 violation warranted a mistrial. Further, because I believe there is probative evidence in the record to support the PCR judge’s findings of fact and conclusions of law, I would affirm the order granting Respondent relief. See McCray v. State, 317 S.C. 557, 559, 455 S.E.2d 686, 687 (1995) (“When there is evidence to support the findings and conclusions of the PCR judge, this Court will affirm those findings and conclusions.”).
The majority states the PCR judge erred when he found a mistrial was the only remedy available to cure the prejudice resulting from the State’s non-disclosure of the Facebook posting as a matter of law.[8] I read the order differently. Throughout his order, the PCR judge correctly articulated that the decision to grant or deny a motion for mistrial is within the trial judge’s discretion and that a mistrial should only be granted “when the prejudice can be removed in no other way.” This is a correct statement of law. See State v. Herring, 387 S.C. 201, 216, 692 S.E.2d 490, 498 (2009) (“[Wjhether to grant or deny a mistrial is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. The grant of a motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that the prejudicial effect can be removed in no other way.”) (citations omitted).
After correctly stating the legal standard for a mistrial, the PCR judge evaluated the facts specific to this case, including: the timing of the State’s introduction of the undisclosed evidence; the strength of the State’s overall case against Respondent; and the importance of Respondent’s trial testimony to his defense. Based on these facts, the PCR judge concluded that: if trial counsel had moved for a mistrial when the State *275 impeached Respondent with undisclosed evidence, the trial judge would have found the prejudice resulting from the State’s misconduct could not have been removed by a curative instruction and the trial judge would have granted the motion. This conclusion by the PCR judge is not a decision controlled by a misapprehension of the standard applied by a trial judge in considering a motion for a mistrial. Rather, it is nuanced application of the law expected of a PCR judge vested with authority to assess the merits of PCR claims pursuant the Strickland standard.[9]
Further, I disagree with the majority’s application of the two prongs of a Strickland analysis to the facts of this case. I disagree with the majority’s assertion that the “quantum of prejudice the PCR judge should have considered was the extent to which Respondent was deprived of the opportunity to reduce the prejudice of the Facebook comment by strategically addressing it on direct examination.” Assessing this “quantum of prejudice” is only pertinent in determining whether the State violated Rule 5, which, in turn, is relevant to the determination of whether trial counsel was deficient. The majority assumes, and I agree, that when the State introduced the Facebook posting at trial without having disclosed it prior to trial, trial counsel should have recognized the State’s Rule 5 violation and acted accordingly. The PCR judge found that trial counsel was deficient for failing to do so, and, in my opinion, there is evidence in the record to support this finding. See McCray, supra.
As for the Strickland prejudice prong, it is the effect trial counsel’s failure to move for a mistrial had on Respondent’s trial at the time the State’s Rule 5 violation became apparent, after which the PCR judge was required to determine whether Respondent had been prejudiced. And not, as the majority concludes, how trial counsel would have addressed the Face- *276 book posting on direct examination had the State properly disclosed the evidence prior to trial.
In determining whether there was a reasonable probability trial counsel’s deficiency affected the outcome of Respondent’s case, I differ with the majority’s interpretation of the record. The majority concludes Respondent committed perjury on the witness stand. After reading the colloquy, which the majority describes as demonstrating “lack of candor on the stand,” I am convinced an equally plausible reading is that Respondent did not intentionally lie, or withhold truth on the witness stand, but rather, merely provided an inartful response to an imprecise question. The fact that the State chose to characterize this response as a lie throughout the remainder of Respondent’s testimony and in closing argument does not make it so. Moreover, in my opinion, it is not for this Court to determine on appellate review that Respondent committed perjury. It is the fact-finder’s role, and solely the fact-finder, to determine the truth or falsity of a witness’ testimony. See State v. Kromah, 401 S.C. 340, 358, 737 S.E.2d 490, 500 (2013) (stating “the assessment of witness credibility is within the exclusive province of the jury...”) (citations and alterations omitted).
Accordingly, I do not believe the PCR judge committed an error of law in considering the effect the State’s impeachment evidence had on the jury’s perception of Respondent’s credibility. This is exactly the quantum of prejudice that should be considered in assessing whether there was a reasonable probability that trial counsel’s deficient performance affected the outcome of Respondent’s trial. Moreover, this case amounted to a pure swearing contest. The jury was asked to determine which story was true: the victim’s, that Respondent propositioned him, or Respondent’s, that he did not proposition the victim, but rather, confronted the victim about his shoplifting. There were no other witnesses to the interaction between the victim and Respondent by the Wal-Mart restroom. Accordingly, I would affirm the PCR judge’s finding that Respondent’s credibility was essential to his defense and the paramount issue for the jury to determine. Further, I believe there is evidence in the record to support the PCR judge’s finding that, absent the Rule 5 violation, the credibility of Respondent’s testimony would not have been called into question in *277 such a devastating way.[10] Thus, pursuant to our scope of review, I would uphold the PCR judge’s finding of Strickland prejudice. See McCray, supra.
Finally, I am also troubled by the policy implication of the majority’s opinion. The majority’s proposed Strickland analysis essentially creates a new rule of law: as long as the State uses incriminating evidence it has withheld in violation of Rule 5 to successfully convince a jury the defendant’s testimony is not credible, the defendant cannot argue he or she was prejudiced. By deflecting blame to the defendant for the State’s Rule violation, the majority’s opinion undermines both the goal of Rule 5 and the role of the State in criminal prosecutions. As the Court of Appeals explains, the purpose of Rule 5 is to ensure the criminal defendant’s right to a fair trial:
[Rule 5] is [not] designed to displace the adversary system as the primary means by which truth is uncovered, but *278 rather to ensure that a miscarriage of justice does not occur. Furthermore, the prosecutor’s role transcends that of an adversary because he is the representative not of an ordinary party to a controversy, but of a sovereignty whose interest in a criminal prosecution is not that it shall win a case, but that justice shall be done.
State v. Kennerly, 331 S.C. 442, 454, 503 S.E.2d 214, 220 (Ct. App. 1998) (internal citations omitted) (internal quotation marks and alterations omitted).
There is probative evidence in the record to support the PCR judge’s conclusion a reasonable probability exists that a mistrial would have been granted had trial counsel moved for one. Therefore, the PCR judge’s determination that Respondent is entitled to relief must be upheld on review. See McCray, supra. To do anything else disregards the great deference afforded to PCR judges’ findings of facts and conclusions of law and condones the State’s action of withholding incriminating, discoverable evidence from the defense until the moment when introducing that evidence will have its most devastating effect.
Accordingly, I would affirm the PCR judge’s order granting Respondent relief.

. The majority states the PCR judge ruled the trial court would have been compelled as a matter of law to grant a mistrial; however, the words "as a matter of law” do not, at any point, appear in the PCR order.

. Indeed, as the majority states, "Had counsel objected, it would have been within the trial court’s discretion to determine the appropriate redress, if any.” That is correct. However, in a PCR action, it is the PCR judge who must determine how the trial judge would have exercised his or her discretion had counsel objected at trial. See e.g. Morris v. State, 371 S.C. 278, 283, 639 S.E.2d 53, 56 (2006) (where this Court found Morris was prejudiced by trial counsel’s deficient performance in failing to move for a continuance because "the refusal of the continuance would have amounted to an abuse of discretion”).

. I note the majority references Respondent’s nine bank robberies as a reason why the introduction of the Facebook posting caused only “incremental'’ prejudice to Respondent. However, we recently held that robbery is not a crime in the nature of crimen falsi, which “bear[s] upon a witness’s propensity to testify truthfully.” See State v. Broadnax, 414 S.C. 468, 476, 779 S.E.2d 789, 793 (2015). Accordingly, it is questionable whether Respondent’s admission to committing nine bank robberies should even bear upon the analysis of whether Respondent’s credibility was damaged by trial counsel's failure to move for a mistrial. Further, even if it were proper to consider the effect of Respondent’s bank robberies in analyzing how Respondent's credibility was affected by the introduction of the Facebook posting, I would still affirm the PCR judge’s finding that Respondent was prejudiced by trial counsel’s deficient performance. See McCray, supra. During Respondent's testimony, Respondent informed the jury that he pleaded guilty to the bank robberies because he committed them, while, in contrast, Respondent did not plead guilty to the charge for which he was on trial because he did not commit the crime. Thus, the effect of the bank robbery convictions on the veracity of Respondent's testimony was negligible. Further, in my opinion, the State's introduction of the undisclosed Facebook posting in a way that confused Respondent and created the opportunity for the State to characterize Respondent as an adult who lies about his social-media contact with a minor victim was manifestly more damaging to Respondent’s credibility during a trial for criminal solicitation of a minor than Respondent’s past bank robberies. Accordingly, there is evidence in the record to support the finding that, if trial counsel had moved for a mistrial when the State’s Rule 5 violation became apparent, there is a reasonable probability the trial judge would have granted the motion. See Strickland, supra.