# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Herbie Val Singleton, Jr., Appellant.

Appellate Case No. 2016-002079

---

Appeal From Charleston County
Benjamin H. Culbertson, Circuit Court Judge

---

Opinion No. 5722
Heard November 7, 2018 – Filed May 6, 2020

---

**AFFIRMED**

---

Appellate Defender Kathrine Haggard Hudgins, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Vann Henry
Gunter, Jr., both of Columbia; and Solicitor Scarlett
Anne Wilson, of Charleston; all for Respondent.

---

**MCDONALD, J:** Herbie V. Singleton, Jr., appeals his conviction for obstruction
of justice, arguing the circuit court erred in denying his motion for a directed
verdict after the State failed to present any direct evidence or substantial
circumstantial evidence that Singleton prevented, hindered, impeded, or obstructed
the administration of justice. We affirm.

**Facts and Procedural History**

In October 2014, Dontaviha Patterson received a laptop and other electronics from his friend Bubba.  Patterson and Lamont Gregg—who knew each other through Singleton—decided to pawn the laptop and split the money; Patterson's mother drove them to the pawn shop.

On November 19, 2014, Gregg was arrested for pawning a stolen laptop and charged with obtaining goods by false pretenses.  When questioned by Sergeant Dan English of the Charleston Police Department (CPD), Gregg stated Patterson gave him the laptop to pawn because Patterson was too young to pawn it himself.  Patterson saw Gregg several times after Gregg was released from jail.  During one of these encounters, Gregg, who was with Singleton at the time, threatened to "lay [Patterson] out" the next time he saw him.

Later that November, Patterson and Singleton began exchanging heated messages on Facebook, some of which were threatening.  On the morning of December 18, 2014, Patterson told Singleton where he was because he heard Singleton was looking for him.  When Singleton responded, he told Patterson that Gregg had been messaging Patterson from Singleton's account.

On the afternoon of December 18th, Singleton was driving Kevin Corley and Elijah Green to play basketball when Gregg flagged down the car.  Gregg asked Singleton to drive him to Acacia Street to see Patterson.  As Singleton approached Patterson's house, Gregg fired a revolver out of the car window towards Patterson, who was sitting outside with his girlfriend.  One of the bullets struck and injured Patterson.

Patterson's mother recognized the car as Singleton's and informed the police; Singleton was arrested shortly thereafter.  Although Singleton initially denied any involvement in the incident, he eventually admitted to driving the car from which the shots were fired.  During his police interview with CPD Detectives Thomas Bailey and Paul Krasowski, Singleton identified three passengers—Corley in the front passenger seat and Green in the rear passenger seat.  As to the third person in the car, Singleton falsely identified Antonio Barrett, who had no involvement with

the incident, as the shooter.[1]  When asked about Gregg,[2] Singleton referred to Gregg as his "homeboy" but neither identified him as a passenger in his car nor as the shooter.

On December 19, 2014, CPD arrested Barrett and charged him with attempted murder.  In describing the decision to arrest Barrett—which was based solely on Singleton's interview—Detective Krasowki explained that although Singleton lied in the early stages of his interview,

> [H]is statement evolved to the point where he was relaying information that we were able to corroborate through other witnesses.  When he identified Elijah Green and Kevin Corley, that was consistent with the other information that we got at the time.  So, it was suggesting that he was—there was credibility to the statement.  He also stated that he did drive by and he drove by with the driver's side facing the, the incident location, the house of [Patterson].  So, everything was jiving.  So, when he went on to describe this—this fourth person, which turned out to be the shooter, there was no reason not to believe him at that point when he did provide all that other corroborating information.

On December 23, 2014, Barrett's mother's fiancé called CPD to report that a neighbor could provide an alibi for Barrett.  Detective Bailey asked for the individual to come to the station to provide a formal statement, but no one did so.  Barrett remained in jail until he bonded out on February 13, 2015.

Green, Corley, and Barrett were indicted for attempted murder; however, the State dropped Barrett's charges on August 24, 2015, after Corley and Green had both made proffer agreements.  Police arrested Gregg in connection with the shooting, and Gregg admitted he fired the gun.  In January 2016, a Charleston County grand jury indicted Singleton for attempted murder and obstruction of justice.

---

[1] At trial, Barrett testified he was babysitting on the day of the shooting.  Although he knew of Singleton, Barrett stated he had no problems with him and did not know why Singleton gave the police his name.  Although Barrett knew Corley and Green from middle school, he was not close with them.

[2] Patterson told police he thought Gregg could be the shooter.

Singleton moved to quash the obstruction of justice indictment, arguing his lies to the police constituted misprision of a felony rather than obstruction of justice. Singleton contended the State chose to indict him for obstruction of justice because he could not be charged as both a primary actor in the attempted murder and with misprision of a felony. Singleton further argued a common law obstruction of justice charge was not applicable against a private citizen but rather required a violation by "someone [who] takes an oath to administer justice." The circuit court denied Singleton's motion to quash the indictment, and the case proceeded to trial.

At the close of the State's case, Singleton moved for a directed verdict on obstruction of justice, arguing his false accusation of Barrett did not obstruct or impede the administration of justice because "[t]he correct shooter pled guilty" eventually, so he did not "prevent it." In making his directed verdict argument, Singleton incorporated his pretrial arguments and renewed his motion to quash the obstruction of justice indictment. The circuit court denied Singleton's motions.

The jury found Singleton not guilty of attempted murder but guilty of obstruction of justice. The circuit court sentenced Singleton under the Youthful Offender Act to a term of imprisonment not to exceed six years.

**Standard of Review**

"On appeal from the denial of a directed verdict, this Court views the evidence and all reasonable inferences in the light most favorable to the State." *State v. Bennett*, 415 S.C. 232, 235, 781 S.E.2d 352, 353 (2016) (quoting *State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014)). "The Court's review is limited to considering the existence or nonexistence of evidence, not its weight." *Id*. "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury." *State v. Harris*, 413 S.C. 454, 457, 776 S.E.2d 365, 366 (2015) (quoting *State v. Brandt*, 393 S.C. 526, 542, 713 S.E.2d 591, 599 (2011)).

**Law and Analysis**

Singleton argues the circuit court erred in denying his motion for a directed verdict because the State failed to present direct evidence or substantial circumstantial evidence to establish Singleton's actions hindered, prevented, impeded, or otherwise obstructed the administration of justice. Further, Singleton asserts that

absent the obstruction of a judicial proceeding,[3] "a private citizen's actions that hinder law enforcement's initial investigation into a crime, without more, cannot constitute obstruction of justice."

Relying on *State v. Cogdell*, 273 S.C. 563, 257 S.E.2d 748 (1979), Singleton argued to the circuit court:

> [T]here must be an intentional failure to perform a duty which would constitute obstruction of justice. And I would argue that that duty is when someone takes an oath to administer justice, whether it is a lawyer, whether it's a judge, whether it's a magistrate, whether—it is someone who is a part of the administration of justice, a public official, appointed or elected. It, it—I would argue the constitution does not provide that there is a duty on the ordinary citizen to come forward when they are charged with a crime and give a truthful statement.

*Codgell* holds that "[a]t common law it is an offense to do any act which prevents, obstructs, impedes, or hinders the administration of justice." *Id.* at 567, 257 S.E.2d at 750 (citing 67 C.J.S. Obstructing Justice §§ 2-3). Although *Codgell* addressed whether common law obstruction of justice had been statutorily preempted in the case of a mayor's failure to report certain traffic violations (the court found no preemption), it did not address the question of against whom an obstruction of justice charge might properly lie.

---

[3] To the extent Singleton now argues that for a private individual to be properly charged with obstruction of justice, the obstructive act must occur in the context of a judicial proceeding, we find this argument unpreserved for appellate review. *See State v. Kennerly*, 331 S.C. 442, 455, 503 S.E.2d 214, 221 (Ct. App. 2014) ("In reviewing a denial of directed verdict, issues not raised to the trial court in support of the directed verdict motion are not preserved for appellate review."); *id.* ("A defendant cannot argue on appeal an issue in support of his directed verdict motion when the issue was not presented to the trial court below."). However, we note Singleton's false accusation resulted in Barrett's being jailed for two months on an attempted murder indictment prior to his posting of bond. Thus, as a direct result of Singleton's deliberate misidentification, Barrett was subjected to the imposition of judicial proceedings.

Most South Carolina obstruction of justice cases have involved public officials; however, this does not preclude a private citizen from being charged with the offense. For example, in *State v. Needs*, our supreme court recognized the existence of probable cause for an obstruction of justice charge brought against a private citizen after she lied to police and at a pretrial hearing by providing a false alibi for her boyfriend. 333 S.C. 134, 146, 508 S.E.2d 857, 863 (1998).

In that case, Needs appealed his convictions for burglary and murder, arguing the trial court erred in denying his motions to dismiss his charges due to the State's alleged intimidation of his alibi witness, Nancy Smith. *Id.* at 145, 508 S.E.2d at 862. Smith initially provided an alibi for Needs, telling police Needs was with her on the night of his stepfather's murder, other than from 11:30 p.m. to 12:30 a.m. Four months later, Smith admitted to police that she lied in her initial statement and claimed Needs had confessed his involvement in the murder. Smith changed her statement again some nine months later, in May 1994,

> giving police a similar statement which implicated [Needs], but insisting [Needs] had couched his entire story in "hypothetical" terms. The State called the case for trial in June 1994. At a pretrial hearing, Ms. Smith recanted her statements about [Needs's] confession to her and testified [he] was with her when his stepfather was murdered. She also produced a diary describing that evening with [Needs].
>
> Ms. Smith testified against [Needs] as described above at the September 1995 trial. On cross examination, she admitted her testimony directly conflicted with the testimony she gave at the June 1994 pretrial hearing. The diary she testified about at the pretrial hearing was a fake, created at [Need's] suggestion . . . . In short, Ms. Smith was first a potential witness for [Needs], then a potential witness for the State, then a potential witness for [Needs], and—finally—an actual witness for the State at trial.

*Id*. at 141–42, 508 S.E.2d at 860–61 (footnote omitted).

After Smith testified at the June 1994 pretrial hearing, a grand jury indicted her on charges of obstruction of justice, accessory after the fact, and misprision of a felony. *Id.* at 144, 508 S.E.2d at 862. Smith eventually pled guilty to misprision

of a felony, and the State dismissed Smith's remaining indictments. *Id.* Our supreme court rejected Needs's arguments that due to the State's efforts to intimidate Smith, the trial court erred in either failing to dismiss Needs's indictments or refusing to suppress Smith's testimony against him. *Id.* at 145, 508 S.E.2d at 862. In affirming Needs's convictions, the supreme court explained, "the evidence showed that Ms. Smith had concealed information and lied to investigators to protect appellant, facts she ultimately admitted at trial. The prosecutor had probable cause to believe Ms. Smith had committed one or more of the indicted crimes, and he did not commit misconduct by pursuing the charges." *Id.* at 146, 508 S.E.2d at 863. *See also State v. Samuel*, 422 S.C. 596, 608 & n.8, 813 S.E.2d 487, 494 & n.8 (2018) (Kittredge, J., dissenting) (emphasizing the importance of trial court discretion in the analysis of a criminal defendant's right to proceed pro se and noting that although the charge was nolle prossed after his murder conviction, Samuel "was also charged with obstruction of justice for repeatedly giving false statements to police in which he identified an uninvolved person as the shooter; for snatching one of his written statements from an investigator's hand and ripping it up; and for lying to police when he claimed to have thrown a gun involved in the murder into a nearby pond—a lie that caused three separate law enforcement agencies, including a dive team from Lexington County, to expend time and resources over several days searching the pond for a non-existent gun" (footnotes omitted)).

Similarly, Singleton knowingly and intentionally lied to law enforcement to prevent Gregg's arrest. *See Cogdell*, 273 S.C. at 567, 257 S.E.2d at 750 ("At common law it is an offense to do *any act* which prevents, obstructs, impedes, or hinders the administration of justice." (emphasis added)). However, Singleton did more than simply lie to law enforcement—he intentionally misidentified someone he knew to be innocent and caused that person to be jailed and indicted. Although Singleton knew first-hand that Gregg shot Victim—because he was driving the car from which Gregg fired the shots—he falsely named Barrett as the shooter. During his police interview, Singleton provided Barrett's name and physical description; he later signed a picture of Barrett, on which he wrote "shot fired from my car."

Based solely on Singleton's interview, the police arrested Barrett on December 19, 2014; Barrett stayed in jail for two months and was indicted for attempted murder. After being subjected to eight months of legal proceedings for a crime he did not commit, Barrett's charges were dropped. Although the police eventually arrested Gregg, Singleton's actions in lying to the police about Gregg and falsely accusing Barrett impeded and delayed the administration of justice. *See State v. Love*, 275

S.C. 55, 62, 271 S.E.2d 110, 113 (1980) ("Success in the effort to obstruct justice is not necessary to constitute the offense; it is sufficient if some act is done in furtherance of the endeavor."); *Hinder*, *Black's Law Dictionary* (10 ed. 2014) (defining "hinder" as "to slow or make difficult . . . to impede, delay, or prevent").

Viewing this evidence in the light most favorable to the State, we find evidence existed to reasonably prove Singleton's lies obstructed the administration of justice by temporarily preventing Gregg's arrest, hindering the police's investigation of Patterson's attempted murder, and causing Barrett to be indicted and jailed for an attempted murder with which he had no involvement. *See Harris*, 413 S.C. at 457, 776 S.E.2d at 366 ("If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury."). Therefore, the circuit court did not err in refusing to direct a verdict in Singleton's favor on the obstruction of justice charge.[4]

## Conclusion

Based on the foregoing, Singleton's conviction is

**AFFIRMED.**

**KONDUROS and HILL, JJ., concur.**

---

[4] We recognize Singleton's concern that a broad definition of obstruction of justice could lead to potential abuse. However, in light of Singleton's conduct in this case, which led to the indictment and two-month detention of an innocent person, this is not such an instance.