**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Haley S. Burns, Plaintiff,

v.

Julius W. Burns, III, Respondent.

Of whom South Carolina Department of Social Services is the Appellant.

Appellate Case No. 2021-000935

———————

Appeal From Cherokee County
Timothy E. Madden, Family Court Judge

———————

Unpublished Opinion No. 2023-UP-156
Submitted February 1, 2023 – Filed April 19, 2023

———————

**REVERSED**

———————

James Victor McDade, of Doyle Tate & McDade, PA, and Andrew Troy Potter, both of Anderson, for Appellant.

J. Benjamin Stevens and Stephen Lundy Chryst, Jr., both of Offit Kurman, of Spartanburg, for Respondent.

———————

**PER CURIAM:**  The South Carolina Department of Social Services (DSS) appeals the family court's order sanctioning it for violating prior orders.  On appeal, DSS argues Family Court Judge Madden erred (1) in awarding sanctions without a properly filed and served rule to show cause, specific findings of criminal contempt, and proof beyond a reasonable doubt; (2) in failing to review the transcript of the hearing in which Family Court Judge Thigpen issued the oral bench order that DSS allegedly violated; (3) in finding he had jurisdiction over DSS when DSS had not been served with pleadings or added as a party in the domestic action; and (4) failing to make specific findings as to damages in determining the amount of the sanctions.  We reverse.

1.  We hold Judge Madden committed an error of law by sanctioning DSS without requiring Father's compliance with Rule 14, SCRFC.  *See Holmes v. Holmes*, 399 S.C. 499, 504, 732 S.E.2d 213, 216 (Ct. App. 2012) (stating the appellate court "will affirm the decision of the family court in an equity case unless its decision is controlled by some error of law or the appellant satisfies the burden of showing the preponderance of the evidence actually supports contrary factual findings by th[e appellate] court").  Judge Madden sanctioned DSS because he found a Cherokee County DSS (CCDSS) caseworker (Caseworker) willfully violated Judge Thigpen's orders.  This alleged violation of a court order falls squarely within the definition of constructive contempt.  *See Widman v. Widman*, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct. App. 2001) ("The power to punish for contempt is inherent in all courts and is essential to preservation of order in judicial proceedings." (quoting *In re Brown*, 333 S.C. 414, 420, 511 S.E.2d 351, 355 (1998))); *id.* ("Contempt results from the willful disobedience of a court order . . . ."); *Miller v. Miller*, 375 S.C. 443, 455, 652 S.E.2d 754, 760 (Ct. App. 2007) ("Constructive contempt is contemptuous conduct occurring outside the presence of the court." (quoting *State v. Kennerly*, 331 S.C. 442, 451, 503 S.E.2d 214, 219 (Ct. App. 1998))).  Accordingly, we hold that under the plain language of Rule 14, Father was required to file a petition for a rule to show cause in order to initiate contempt proceedings against DSS.  *See* Rule 14(a), SCFCR ("Except for direct contempt of court, contempt of court proceedings shall be initiated *only* by a rule to show cause duly issued and served in accordance with the provisions hereof." (emphasis added)); *See* Rule 14(a), note ("The rule to show cause provided herein is for contempt of court arising from failure to comply with the Court's orders, decrees or judgments and for enforcement thereof.  This form of contempt is known as constructive contempt of court."); *Kosciusko v. Parham*, 428 S.C. 481, 496, 836 S.E.2d 362, 370 (Ct. App. 2019) ("In interpreting the meaning of [procedural rules], the [c]ourt applies the same rules of construction used to interpret statutes." (alterations in original) (quoting *Ex parte Wilson*, 367 S.C. 7,

15, 625 S.E.2d 205, 209 (2005))); *id.* ("If a rule's language is plain, unambiguous, and conveys a clear meaning, interpretation is unnecessary and the stated meaning should be enforced.").

2.  Moreover, we hold Judge Madden erred in sanctioning DSS based on Caseworker visiting Children's school after the October 15, 2020 hearing before Judge Thigpen.  *See Taylor v. Taylor*, 434 S.C. 307, 316, 863 S.E.2d 335, 340 (Ct. App. 2021) ("Contempt results from the willful disobedience of a court order, and before a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct." (quoting *Widman v. Widman*, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct. App. 2001))).  It appears the family court relied to its detriment upon a statement in Father's sanctions filings that Caseworker visited Children's school after Judge Thigpen ruled from the bench that CCDSS had a conflict in investigating this matter.  Our review of the October 15, 2020 transcript of the hearing before Judge Thigpen reveals no such ruling.  At the hearing, Judge Thigpen asked counsel for CCDSS, "Do you feel like you have a conflict or your office has a conflict?"  Counsel responded, "Speaking with the caseworker I believe that out of an abundance of caution we would agree with [the guardian ad litem's] motion for this to be transferred due to the potential conflict."  Judge Thigpen then discussed possible county DSS offices that might take the investigation and asked DSS counsel, "Assuming I do that, can you make that referral and—probably York [County] would be the closest?"  DSS counsel agreed; Mother's counsel had no objection to York County; Father's counsel expressed a preference for Greenville County; and Mother's counsel noted either York County or Greenville County DSS would be fine.  Father's counsel then immediately moved on to the other issues being discussed at the emergency hearing.  No further discussion of transferring the case occurred (at least not on the record), and Judge Thigpen made no oral ruling on the conflict or investigative transfer issues raised.

A review of the October 15 hearing transcript reveals the following findings in the family court's sanctions order lack evidentiary support: 1) Judge Thigpen "ruled from the bench on the issue of the conflict of CCDSS and this family"; 2) Judge Thigpen, in the presence of CCDSS counsel and Caseworker "ordered the transfer of the investigation of the CCDSS case to another county"; and 3) "[b]oth [CCDSS counsel and Caseworker] heard his ruling on the issue of the conflict."  Simply put, at the time of Caseworker's October 15 school visit, there was no order—oral or written—in place to support a consideration of contempt or an award of sanctions.  *See id.* at 317, 863 S.E.2d at 340 ("One may not be convicted of contempt for violating a court order which fails to tell him in definite terms what he must do.  The language of the commands must be clear and certain rather than implied."

(quoting *Phillips v. Phillips*, 288 S.C. 185, 188, 341 S.E.2d 132, 133 (1986))); *id.* "A court need go no further in reviewing the evidence in a contempt action when there is uncertainty in the commands of an order." (quoting *Phillips*, 288 S.C. at 188, 341 S.E.2d at 133).

Because the above issues are dispositive, we decline to address DSS's remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding when the disposition of a prior issue is dispositive, an appellate court need not address remaining issues).

**REVERSED.**[1]

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.