**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Michael Christian Barclay, Appellant.

Appellate Case No. 2021-000976

———————

Appeal From Florence County
D. Craig Brown, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-259
Heard May 8, 2024 – Filed July 23, 2025

———————

**AFFIRMED**

———————

Appellate Defender Joanna Katherine Delany, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William Joseph Maye, both of Columbia; and Solicitor Edgar Lewis Clements, III, of Florence, all for Respondent.

———————

**MCDONALD, J.:** Michael Christian Barclay appeals his conviction for murder and sentence of life imprisonment. He argues the circuit court erred in (1) failing to dismiss his murder charge following a series of due process violations relating to

law enforcement's preservation and production of evidence, (2) instructing the jury on accomplice liability, (3) declining to instruct the jury on a lesser included offense of voluntary manslaughter, and (4) declining to instruct the jury that it could draw an adverse inference against the State due to the destruction or loss of certain in-car camera footage.  We affirm.

1.  The circuit court did not abuse its discretion in failing to dismiss Barclay's murder charge due to the discovery problems that culminated in the purging of Officer Christopher Miles's car camera footage by the Timmonsville Police Department.  *See State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006) ("In criminal cases, the appellate court sits to review errors of law only."); *State v. Durant*, 430 S.C. 98, 107, 844 S.E.2d 49, 53 (2020) ("A *Brady*[1] violation occurs when the evidence at issue is: 1) favorable to the accused; 2) in the possession of or known to the prosecution; 3) suppressed by the prosecution; and 4) material to the defendant's guilt or punishment."); *id.* ("Such a violation is material when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  In other words, the government's evidentiary suppression is so serious as to the undermine confidence in the trial's outcome." (citation omitted)).

Although the State admits mistakes were made during the discovery process, the record does not demonstrate that the State engaged in a "pattern of discovery abuses that culminated in the destruction" of Miles's car camera footage.  Barclay filed a supplemental motion for discovery after his counsel reviewed the solicitor's file and realized the defense was missing "numerous pieces of discovery"; those missing items raised concerns about what else the defense should have received but was not provided.  The circuit court held a hearing and analyzed each supplemental request in an effort to determine what the State had and had not provided.  The court also directed the State to follow up with the State Law Enforcement Division regarding certain SLED worksheets Barclay had not received.  The court declined to reconsider Barclay's bond at this hearing.

Further discovery problems followed as the trial date approached.  Five days before the scheduled trial, Barclay belatedly received six discs containing "over three and a half hours of body camera footage from the night [of] and next day surrounding" the shooting.  This footage from Captain Mark Strickland, the Timmonsville Police Department's lead investigator, showed Strickland's response to the scene, numerous witness interviews, and other information Barclay correctly

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

argued should have been disclosed to him "years ago." Barclay moved to dismiss the murder charge, or in the alternative, for a continuance and reconsideration of his bond.[2] The circuit court held another hearing and admonished the Timmonsville Police Department for its evidence handling practices, including its failure to provide Captain Strickland's body camera footage. The court also granted Barclay a three-month continuance and a bond reduction, giving counsel time to review the late-provided footage and follow up as needed. *See State v. Kennerly*, 331 S.C. 442, 453, 503 S.E.2d 214, 220 (Ct. App. 1998) ("In a *Brady* analysis, information is not deemed 'material' if the defense discovers the information in time to adequately use it at trial."), *aff'd*, 337 S.C. 617, 524 S.E.2d 837 (1999); *see generally State v. Carlson*, 363 S.C. 586, 610, 611 S.E.2d 283, 295 (Ct. App. 2005) (finding State's nondisclosure of transcript of witness's prior inconsistent statement did not undermine confidence in the outcome of defendant's trial where his counsel was "given the opportunity to review and use the inconsistent statement in cross-examination" and "there is no reasonable probability the outcome of the trial would have been different").

As for Officer Miles's car camera footage, the only evidence presented indicates the footage was initially in the Timmonsville Police Department's possession, but was at some point purged or "kicked out" of the system. *See State v. Moses*, 390 S.C. 502, 518, 702 S.E.2d 395, 403 (Ct. App. 2010) ("While *Brady* imposes a duty on the State to *disclose* material evidence favorable to the defendant, the State has the additional duty, albeit not an absolute duty, to *preserve* evidence that is favorable to the defendant."); *Kennerly*, 331 S.C. at 452, 503 S.E.2d at 220 ("The prosecution has the duty to disclose regardless of whether the defendant makes a specific request. This rule extends to evidence that is not in the actual possession of the prosecution but known by others acting on the government's behalf in the particular case, including the police." (citation omitted)). There is no evidence in the record that the State destroyed this car camera footage in bad faith or that the footage might be favorable to Barclay. And, although Officer Miles was the first officer to arrive on the scene of the shooting, Captain Strickland arrived one to two minutes later. Strickland's bodycam footage was provided to the defense—albeit very belatedly.

---

[2] Barclay's counsel argued Barclay's name is not mentioned in this footage, but noted other suspects are implicated, including members of the Hampton family. Captain Strickland failed to identify many of the witnesses shown in the crowd footage—estimated as between fifteen and thirty people—did not otherwise document some of these interviews, and did not prepare a crime scene log.

In his appellate brief, Barclay acknowledges that the "more difficult hurdles for [him] to cross are whether the evidence was favorable to the accused and material to his guilt" and asserts that although Miles's footage likely differed from Strickland's, "there were likely similarities as both responded to the scene." Still, Barclay argues that this court "must conclude the Miles footage was favorable and material based upon the solicitor's own words about the Strickland footage when he proclaimed the Strickland footage 'would be reasonable doubt.'" But we can only speculate about whether the purged car footage might contain exculpatory—as opposed to inculpatory—evidence. *See State v. Anderson*, 407 S.C. 278, 287, 754 S.E.2d 905, 909 (Ct. App. 2014) (finding the referenced evidence did not implicate *Brady* because "the exculpatory value of the unmatched prints was entirely speculative"). For these reasons, we find no reversible error in the circuit court's conclusion that Barclay failed to show there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Durant*, 430 S.C. at 107, 844 S.E.2d at 53.[3]

2. Barclay's argument that the circuit court erred in instructing the jury on accomplice liability is not preserved for our review because Barclay's argument on appeal differs from his argument before the circuit court. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693-94 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court]. . . . A party may not argue one ground at trial and an alternate ground

---

[3] Had the circuit court not so thoroughly addressed these Timmonsville Police Department failures, our analysis would be more difficult, and a few additional points bear mention. Strickland's nonchalance in failing to disclose his body camera footage, despite the solicitor's apparent requests, is troubling. Also of concern was Strickland's decision to allow multiple witnesses to sit together at a conference table as they prepared to write their statements. These individuals included members of the Hampton family, such as Jimmy Lee Hampton, Sr., a former Timmonsville police officer sentenced to federal prison in 2000 for drug offenses arising from his work as a DARE officer. Barclay's defense was that there was no "credible evidence" against him because Jimmy Lee Hampton, Sr., orchestrated his charge to protect a family member not indicted in connection with the drive-by shooting. But Hampton, Sr.'s son, Jimmy Lee Hampton, Jr., was also charged with the murder, and eyewitnesses identified Barclay as driving the lead "red" car and as one of the shooters. Eventually, due to the former Timmonsville police chief's relationship with the Hampton family and the complexity of the investigation, the Florence County Sheriff's Department took command. Captain Strickland was later demoted.

on appeal." (citations omitted)); *State v. Jordan*, 255 S.C. 86, 93, 177 S.E.2d 464, 468 (1970) (refusing to consider an appellate argument that was asserted to show the trial court erred in denying his directed verdict motion when the argument was not raised as a ground for the motion at trial). Although Barclay objected to the accomplice liability instruction, he did not argue before the circuit court that the instruction was improper due to the lack of definitive evidence establishing which co-defendant fired the .9mm that killed the victim or that the evidence was insufficient to establish Barclay's co-defendant had only a .380 on the night of the shooting. Rather, at trial, Barclay argued 1) the evidence did not support the instruction because there was no evidence that Barclay was present at the scene or "connected to the charged crime"; (2) even if he was there, the evidence warranted only a "mere presence" charge; (3) merely alleging who was present at the scene at the time of the shooting was insufficient to support the charge; and (4) there was no indication of any concerted effort or conspiracy that might support such a charge. Because Barclay has raised a different argument on appeal in contesting this instruction, his challenge of the accomplice liability charge is not preserved for our review. *See State v. Williams*, 439 S.C. 620, 622-23, 889 S.E.2d 562, 563 (2023) (holding question of transferred intent was not preserved for review because defendant's trial argument for a directed verdict pertained only to the alleged lack of sufficient evidence as to the identity of the shooter, whereas his appellate argument pertained to the insufficiency of evidence of intent and the inapplicability of transferred intent to attempted murder).

3. Barclay's argument that the circuit court erred in declining to instruct the jury on voluntary manslaughter is likewise not preserved for our review. *See Dunbar*, 356 S.C. at 142, 587 S.E.2d at 693 ("In order for an issue to preserved for appellate review, it must have been *raised to and ruled upon* by the trial [court]." (emphasis added)). We acknowledge the record contains a short discussion of voluntary manslaughter, including the question of how transferred intent might apply in this factual scenario; however, Barclay merely thanked the circuit court after the court initially mentioned voluntary manslaughter and left it "in the court's discretion" during a later discussion. Although Barclay notes in his recitation of the facts applicable to this issue that he "thanked the judge for his ruling, implying that [he] had made an off-the-record request for the instruction," we see nothing in the record to demonstrate Barclay raised or requested a voluntary manslaughter charge as opposed to the court, sua sponte, raising the question during a chambers conference. *See generally Smalls v. State*, 422 S.C. 174, 182 n.3, 810 S.E.2d 836, 840 n.3 (2018) ("When a conference takes place off the record, it is trial counsel's duty to put the substance of the discussion and the trial court's ruling on the record."); *State v. Franks*, 432 S.C. 58, 79, 849 S.E.2d 580, 591 (Ct. App. 2020)

("An objection made during an off-the-record conference which is not made part of the record does not preserve the question for review." (quoting *York v. Conway Ford, Inc.*, 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997))).  In any event, at no point did Barclay argue on the record for or against a voluntary manslaughter charge.  Thus, this issue is not preserved for review.  *See Williams*, 439 S.C. at 622–23, 889 S.E.2d at 563 (finding Williams failed to preserve question of whether transferred intent applied to his specific intent crime because only the State and trial court raised the issue of transferred intent); *State v. Simmons*, 423 S.C. 552, 561, 816 S.E.2d 566, 571 (2018) ("There are four basic requirements to preserving issues at trial for appellate review.  The issue must have been (1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity." (citation omitted) (quoting *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301-02, 641 S.E.2d 903, 907 (2007))).

4.  The circuit court did not err in declining to instruct the jury that it could draw an adverse inference against the State due to the purging of evidence, specifically Officer Miles's car camera footage.[4]  *See State v. Burkhart*, 350 S.C. 252, 261, 565 S.E.2d 298, 302 (2002) ("In general, the trial judge is required to charge only the current and correct law of South Carolina."); *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010) ("An appellate court will not reverse the trial [court's]

---

[4] We note Barclay's argument that the circuit court erred in analyzing his request for a spoliation charge under *State v. Cheeseboro*, 346 S.C. 526, 552 S.E.2d 300 (2001) is likely not preserved for review.  *See Dunbar*, 356 S.C. at 142, 587 S.E.2d at 693 ("In order for an issue to preserved for appellate review, it must have been raised to and ruled upon by the trial [court].").  Although the spoliation request was mentioned in chambers and the circuit court's decision was placed on the record, the record does not indicate Barclay objected to the circuit court's analysis of his request under *Cheeseboro*.  To the extent Barclay may have objected in chambers, he should have placed his objection on the record as it is unclear whether the improper analysis Barclay contends the circuit court conducted was the basis of any off-the-record objection.  *See State v. Washington*, 431 S.C. 394, 404-05, 405 n.4, 848 S.E.2d 779, 784-75, 785 n.4 (2020) (finding an argument that an alleged statement was "a prior inconsistent statement and therefore not hearsay" was not preserved for review and noting "the importance of placing on the record arguments and rulings that took place off the record, whether during a bench conference, in emails, or in chambers"); *Smalls*, 422 S.C. at 182 n.3, 810 S.E.2d at 840 n.3 ("When a conference takes place off the record, it is trial counsel's duty to put the substance of the discussion and the trial court's ruling on the record.").

decision regarding a jury charge absent an abuse of discretion."); *State v. Gault*, 375 S.C. 570, 574, 654 S.E.2d 98, 100 (Ct. App. 2007) ("An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law."); *State v. McBride*, 416 S.C. 379, 389, 786 S.E.2d 435, 440 (Ct. App. 2016) ("Adverse inference charges are rarely permitted in criminal cases.").

**AFFIRMED.**

**THOMAS, J., and VERDIN, A.J., concur.**